# EX PARTE ROWE ON HABEAS CORPUS.

A party committed for refusing to answer questions propounded to him as a witness, under an order that he stand committed till he answer the questions, will be discharged on *habeas corpus*, where it appears that the suit has abated: there being no longer parties or subject-matter before the Court, there is no longer a case in which the questions can be asked.

It *seems* that the refractory witness might still be reached by attachment for the contempt, and by a judgment thereon.

Per *Burnett, J.*—Every Court empowered to punish for contempt, is not the sole and final judge in all cases of alleged contempt.

A commitment for contempt for refusing to obey an *unlawful* order of Court, can be reviewed and set aside by a superior Court.

The return of the officer shows that the prisoner is in custody, by virtue of an order of the Court of the Sixth Judicial District, for refusing to answer certain questions propounded to him as a witness, in a proceeding against Henry Bates, as State Treasurer, to compel the said Bates to file an additional bond of office, as provided by the sixteenth and seventeenth sections of an act concerning the official bonds of officers, passed February 28, 1850.

The order of the Court directs, that the prisoner shall stand committed until he complies, by answering the questions propounded. It also appears that since the commitment, Bates has resigned the office of State Treasurer.

*Botts* for Petitioner.

*Hereford*, Contra.

MURRAY, C. J.—Granting for the purposes of this writ, that the Court below had jurisdiction of the subject-matter of the proceeding against the Treasurer; that the questions asked the witness were proper, and he was bound to answer them; that the commitment is regular, and that we cannot go behind it; we are still of opinion that we are bound to discharge him under the provisions of the twentieth section of the *Habeas Corpus* Act, which provides, that where the imprisonment was at first lawful, yet, by some omission or event which has taken place afterwards, the party has become entitled to be discharged, he shall be discharged, etc.

We do not deny that each Court is the sole judge of its own contempts; that such judgments are not the subject of review; and that comity alone should restrain Courts from interfering with each other in this behalf. But the exercise of this power is regulated by the statute. The cases in which a Court may punish for contempt, are pointed out, and the penalty fixed.

The *Habeas Corpus* Act has declared in what cases a party, restrained of his liberty, shall be discharged, and its provisions apply equally to imprisonments for contempt, as well as for any other cause. Admitting, as before remarked, that the petitioner was properly imprisoned, let us inquire if there was any authority to hold him after the resignation of the State Treasurer.

The proceeding was against Dr. Bates, in his official capacity; the object, to enforce a new bond. The extent of the judgment would have been an order requiring such bond, and perhaps a judgment against the officer, declaring the office vacant. This proceeding has abated by the resignation of that officer, and, having resigned, no judgment can be pronounced against him in his official capacity. The resignation has worked a discontinuance of proceeding, and the Sixth District Court has lost all jurisdiction over the matter.

If the petitioner had been fined and imprisoned for refusing to answer the questions propounded to him, that would have been a complete judgment against him, with which we would not have interfered. But there was no final judgment for contempt; the order was only provisional, and in conformity with the four hundred and eighty-ninth section of the Practice Act, which provides, that "when the contempt consists in the omission to per-

form an act which is yet in the power of the party to perform, he may be imprisoned until he have performed it, and in that case the act shall be specified in the warrant of commitment."

What, then, was the act required to be done? To answer certain questions in a certain case. As long as the case was in existence, that long the party might be imprisoned, as he is held for refusing to perform an act which is in his power to perform; but the suit having abated by the resignation of Bates, is it any longer in his power to comply? There are neither parties nor subject-matter before the Court; there is no longer a case in which the questions can be asked.

Suppose the party should now signify his willingness to answer, how could he do so? What right has the Court to pursue a cause abandoned by the parties, over which it has no jurisdiction? How can the party purge himself of the contempt by coming in and offering to answer questions which no one has any longer the right to ask? The law does not require a vain act to be done. The prisoner may still be liable to fine and imprisonment for disobeying the original order, but he cannot be further restrained of his liberty, under the present warrant, as it is shown that it is now impossible to comply with the order, and his imprisonment would of necessity be perpetual. This principle was substantially decided in the matter of A. A. Cohen, on *habeas corpus.*

We are of opinion, that with the resignation of the Treasurer, the suit terminated, and that all its incidents fell with it; that the order cannot now be enforced; and that the only way that the matter could be reached, regarding it as a contempt to the District Court, would be by an attachment in that Court for contempt, and a judgment thereon. By this means, the dignity of the Court would be vindicated, while, at the same time, the prisoner would not be punished beyond the provisions of the law.

Ordered that the writ be dismissed, and the prisoner discharged.

BURNETT, J.—While I concur in the order of the Court discharging the prisoner, I am not prepared to sustain all the grounds stated in the opinion of the Chief Justice, in the terms used by him. That portion of the opinion which says: "We do not deny that each Court is the sole judge of its own contempts, that such judgments are not the subjects of review," etc., I think is too broad and general, and needs some qualification.

It is true that "the cases in which a Court may punish for contempt are pointed out and the penalty fixed" by law; and it would seem equally true that if "each Court is to be the sole judge of its own contempts," and that the judgment of each Court in such cases is "not the subject of review," that there these provisions of the law are *safely* addressed to each Court separately, and

that each Court must decide finally the question whether a con-
tempt had been committed or not in the particular case.    If then
any Court authorized to punish for contempt, shall decide that a
contempt has been committed, and that judgment cannot be re-
viewed, then when it appears that the prisoner has been com-
mitted for such contempt, the Court or officer issuing the writ of
*habeas corpus* should at once remand the prisoner.

The doctrine " that every Court, at least of the superior kind,
in which great confidence is placed, must be the *sole judge* in the
last resort of contempts arising therein," seems to have been
well settled in the English Courts, and was expressly decided
in the case of Yeats.    4 Johns., 369.

But if this be the true doctrine as to cases of contempt in this
State, then in the case before this Court we should have re-
manded the prisoner.

That the judgment of this Court was substantially a review of
the proceedings of the District Court, seems clear to my mind.
In the petition it was alleged in substance that *after* the resigna-
tion of the State Treasurer, application had been made to that
Court by the petitioner for his discharge, upon the same grounds
as those relied upon in this court, and that the District Court
refused the application.    The same fact is stated in the certifi-
cate of the Judge.    Now whether the petition and certificate, or
either of them, was competent evidence to prove the fact alleged,
they were sufficient at least *as against the petitioner*.    The District
Court had there exercised its judgment upon the very point
involved, which point did regard the legality of the *continu-
ance* of the imprisonment in a case of contempt.

. The only question in this case about which I had any serious
doubt, was whether this Court could review the decision of the
District Court in a case of contempt.    And whether this review
was had in the form of appeal, writ of error, or on *habeas corpus*,
was in my view the same in substance, and only differed in the
mere *mode*.    The same end was attained—the same result ac-
complished.    If then we in any form substantially defeated the
judgment of the District Court, we did in fact review it.

The main difficulty in reference to the right of this Court to
review such decision, arose under the four hundred and ninety-
third section of the Practice Act, which provides that " the
judgment and orders of the Court or Judge in cases of contempt,
shall be final and conclusive."

This language of the statute would at first view seem to be
very express and conclusive.    But in arriving at the true inten-
tion of the law, we must look to all portions relating to the same
matter, and also the general drift and spirit of our system.    The
framers of our Constitution intended to produce an entire sys-
tem, harmonious and efficient in all its features.    The same rights
were intended to be secured to all.    The same judicial construc-

tion of the law, was equally contemplated. For this purpose *one Supreme Court* is created by the Constitution.

If then, in a certain class of cases, deeply affecting the liberty of the citizen, even to the extent of perpetual imprisonment, the Supreme Court cannot review the decision of inferior Courts it would leave our judicial system without unity and efficiency; and make the liberty of the citizen virtually subject to the discordant decisions of all the County and District Courts of the State.

It is provided in the eighth section of the first article of the Constitution of this State, that no man shall be compelled to be a witness against himself. Suppose a witness be required by an inferior Court to answer a question when the answer would be testimony against himself, and upon his refusal the Court commits him for contempt until he shall answer, and continues the case before the Court, as it may do, to await the answer of the witness. What is the witness to do? He must do one of two things, in case this Court can give him no relief. He must criminate himself, or remain in prison. The Court below must decide upon the necessity of the answer, and must keep him in confinement until he does answer. Now the question whether the witness is legally bound to answer, is a question of law, and the decision of this legal question by the inferior Court must be final and conclusive, unless this Court can interfere.

The disobedience of an order of Court is only a contempt when it is a *lawful* order. If this Court could not review the orders of inferior tribunals in cases where parties are committed for a contempt in disobeying such orders, then there would be a manifest defect of justice. And if it be conceded that this Court can review the order itself, then it would seem to follow that this Court may also hold the commitment to be illegal. The one depends upon the other. And this Court in the case of A. A. Cohen, decided at the July Term, 1856, there substantially held the right of this Court to review the decisions of inferior tribunals in cases of contempt. The prisoner in that case was committed by the District Court for disobeying one of its orders, and this Court held that the order itself was erroneous, and discharged the prisoner. It is true that in that case the decision was also predicated upon the ground that the Court below had no jurisdiction of the case. But this Court also decided substantially, as I understand it, that conceding jurisdiction over the case, still the order was erroneous, and the order itself being illegal, the imprisonment under it was equally so.

But it does not follow, as I conceive, that because this Court can review the orders of inferior tribunals in cases of contempt, and that the District and County Courts, as well as this Court, and the Judges of all these Courts in rotation, are authorized to issue writs of *habeas corpus*—that therefore, a District or County

Court or Judge, can reverse the orders of this Court in cases of contempt or in other cases. It is true the Constitution authorizes all these Courts and Judges to issue the writ, and this in general terms. But the fact that they all can issue the writ does not confound a distinction in reference to their *relative* powers. The writ may be required in many cases where the prisoner is held by no order of a higher court, and this was the reason why inferior courts and their Judges were authorized to issue this writ.

If the Constitution intended that the inferior Court or Judge might release on *habeas corpus* a prisoner committed by a superior Court, then there would seem to be a strange anamoly in our judicial system. There could be no harmony in such a system; no due dependence of one part upon another; no distinction between the powers of different Courts. The Judge of a County Court could defeat the judgment of this Court; and so could a single Judge of this Court defeat the judgment of a full bench, and carry out his dissenting opinion in the form of a writ of *habeas corpus.* This would leave our Courts in perpetual conflict with each other—one committing to prison and another releasing, without any *one* tribunal to produce uniformity of decisions.

It is true that the statute of this State (Com. L., 170,) provides that when it appears that the prisoner is in custody by virtue of process from any Court of this State, or Judge, or officer thereof, such prisoner may be discharged in one of several cases, among which are these :

1. When the jurisdiction of such Court or officer has been exceeded.

2. When the process, though proper in form, has been issued in a case not allowed by law.

Now, if the language of this section of the Habeas Corpus Act be given a wide construction, it would authorize *any* Judge to decide whether *any* Court had jurisdiction of the question, and also whether *any* Court had properly decided the legal question whether the process had been issued in a case allowed by law.

But this language, like general terms in a statute, must be construed with reference to other statutes, and must be made to harmonize with the leading features of our system. It would seem not to have been the intention of the Legislature in the use of this general language, to confound all distinctions, both in inferior and superior Courts in such cases.

Putting the different provisions of our statutes together, and taking a comprehensive view of the drift and spirit of our institutions, as well as the nature and reason of the cases, it occurs to me. that these conclusions are just :

1. That each Court empowered to punish for contempt is not the sole and final judge in all cases of contempt.

2. That neither by writ of *habeas corpus* nor in any other form, can inferior Courts or single Judges set aside, review, or in any manner defeat the orders or judgments of superior Courts.