[Crim. No. 1684. In Bank:—July 31, 1911.]

In the Matter of FRANK SHAY on Citation for Contempt of Court.

CONTEMPT OF COURT—VIOLATION OF DUTY BY ATTORNEY—CONTEMPT NOT IN PRESENCE OF COURT.—The amendment of 1891 to subdivision 13 of section 1209 of the Code of Civil Procedure, providing that "no speech or publication reflecting upon or concerning any court, or any officer thereof, shall be treated or punished as a contempt of such court, unless made in the immediate presence of such court while in session, and in such a manner as to actually interfere with its proceedings," was not intended to modify, and did not impliedly repeal, subdivision 3 of that section, which makes misbehavior in office, or other willful neglect or violation of duty by an attorney, or other person, appointed or elected to perform a judicial or ministerial service, a contempt of court.

ID.—AMENDMENT TO SECTION 1209 OF CODE OF CIVIL PROCEDURE.—The purpose of that amendment was to prevent the punishment of ordinary citizens, not connected with the court nor owing to it any special duty of fidelity and respect, for any speech or publication,

in censure or abuse of the court or the justices thereof, made to other persons, or to the general public, or even to the justices themselves, in the exercise of the common privilege of free speech.

ID.—CONTEMPTS BY COURT OFFICIALS NOT IN PRESENCE OF COURT.—Attorneys and such other persons are actually or potentially officers of the court, and stand in confidential relations towards it, and in consequence thereof they owe to the court the duty of greater fidelity and respect than are due from other persons. Their special duties may be violated by acts not done in the immediate presence of the court, and which would not influence the judges nor affect the proceedings, but which would tend to degrade the court in the minds of the people. For such a violation of his duty, an attorney may be punished for contempt.

ID.—LETTER BY AN ATTORNEY TO ANOTHER—FALSE STATEMENT OF INTIMACY WITH JUSTICES OF SUPREME COURT.—A letter written by an attorney at law to another, in the course of professional business, falsely imputing to the justices of the supreme court improper conduct of which they are entirely innocent, and calculated to create the false impression that the members of that court are on terms of undue intimacy with powerful litigants, constitutes a contempt of court, although the letter was not intended to be made public, and it became public against the wish of the writer and the recipient. Such a false impression is most mischievous and must tend greatly to impair the confidence of the people in the integrity of the court.

PROCEEDINGS to punish an attorney at law for a contempt of court.

The facts are stated in the opinion of the court.

Guy V. Shoup, and C. W. Durbrow, for the Accused.

SHAW, J.—This proceeding was instituted in consequence of the fact coming to the knowledge of the court that the following letter, dated March 25, 1910, had been written at San Francisco and sent to J. W. McKinley at Los Angeles, to wit:

"Dear Sir: I have just wired you copy of order this day entered by the supreme court in the case of *Duncan* versus the *Superior Court, Imperial County, et al.* I enclose copy of the order. I also enclose the court's copy of petitioner's points and authorities on application for writ of prohibition. Please make copies for your use and return to me as soon as possible. As stated in my second telegram of this date, the reason why the order to show cause was issued was because of the weakness of paragraph 5 of the complaint in the foreclosure suit.

"The supreme justices, in conversation with me to-day all seemed to be of the opinion that this paragraph should be amended so as to state the facts, as required under the decision in the case of the *Bank of Woodland* versus *Stevens,* 144 Cal., page 660, and to have an order made reappointing the receiver. It was suggested that if this could be done between now and Monday it would be an answer to the application.

"The justices, without exception, were of the opinion that the appointment of the receiver would be reversed by direct appeal, although it might not be subject to collateral attack.

"As stated in my second message above referred to, it seemed to be the consensus of opinion among the justices that inasmuch as the court has jurisdiction to appoint a receiver in an action of foreclosure, the certificates heretofore issued would be a first lien upon the property, even though the order making the appointment should be reversed on direct appeal.

"W. F. HERRIN,<br>"by M."

Each of the justices of this court well knew that no such conversation as that referred to in the letter had ever occurred, either with W. F. Herrin, or any other person. The truth is that W. F. Herrin did not see or talk with the justices of this court, or either of them, upon any matter mentioned in said letter, that they did not, nor did any of them, state to any person that the complaint referred to in the letter or any part, or paragraph thereof, "should be amended so as to state the facts," or that such amendment "would be an answer to the application" for prohibition, or that an order should then "be made reappointing the receiver," or that the order appointing the receiver "would be reversed upon direct appeal, although it might not be subject to collateral attack," or that "the certificates heretofore issued would be a first lien upon the property, even though the order making the appointment should be reversed on direct appeal," or anything of like effect as to any of these matters.

Knowing these facts, and being wholly unable to account for the writing of such a letter by any person, and upon learning further that the letter was written by Frank Shay, an attorney of the law department of the Southern Pacific Company, the court deemed it advisable to set on foot some proceeding which would bring about an investigation concerning it. To that

CLX Cal.—26

end, Frank Shay was cited to show cause why he should not be punished for the writing of said letter, as for a contempt.

He appeared and answered, avowing the authorship of the letter and admitting that the statements therein were false as above stated. The investigation showed that the facts giving rise to the letter were as follows: In December, 1909, an action was begun in the superior court of Imperial County, by the Title Insurance and Trust Company, against California Development Company, Southern Pacific Company and others, to foreclose a trust-deed executed by the California Development Company to secure its bonds to the amount of five hundred thousand dollars. The property conveyed as security included lands, water-rights, canals, and personal property comprising the irrigating system of the Development Company, by means whereof it takes water from the Colorado River and supplies the same to the farmers of the large irrigated region constituting practically all of the cutlivated lands in Imperial County. In that action a receiver was appointed by an order made at the time of the filing of the complaint, *ex parte,* and without notice to the defendants. In January, 1910, one Boaz Duncan, a holder of said bonds to the amount of $165,120, obtained leave to intervene in the action, and filed a complaint in intervention therein. In March, 1910, the receiver filed a petition therein for authority to issue receiver's certificates in the action to the amount of $344,752.12, the same to become a first lien upon the property. J. W. McKinley appeared as attorney for the receiver in that behalf. That court was proceeding to the hearing of said petition, whereupon, on March 24, 1910, Boaz Duncan filed in the supreme court an application for a writ of prohibition, against said superior court and said receiver, to prevent said court from proceeding further in the matter of said receiver's petition. This application was based on the claim that the order appointing the receiver was void because the complaint in said action, and the affidavit in support thereof, did not state facts sufficient to give that court jurisdiction to appoint a receiver. Upon the filing of this application, this court, deeming the jurisdiction of the superior court doubtful, and the question sufficiently important, forthwith issued an alternative writ of prohibition, directing the superior court and the receiver to show cause on April 11, 1910, at Los Angeles, why the writ should not be made permanent.

This was done without notice, in accordance with the regular
and usual practice, and on the day the application was filed.
The alternative writ was served on the receiver on March 25,
1910, at Los Angeles.  Thereupon J. W. McKinley, at Los
Angeles, on behalf of the receiver, sent a telegram addressed
to W. F. Herrin, at San Francisco, as follows:—

"Los Angeles, March 25-10.

"W. F. Herrin, S. F.

"Duncan has obtained order prohibiting superior court from
proceeding on issue of receiver's certificates and other matters.
Please see papers.  Return day April 11th.  If possible obtain
order shortening time so that motion to dismiss on moving
papers or whole matter upon affidavits can be heard earlier.

"J. W. McKinley."

Mr. Herrin, at that time and for some time before and after
that date, was absent from the state of California.  Mr. Shay
states in his answer herein that Mr. Herrin had no knowledge
concerning said prohibition proceedings.  The telegram was
delivered at the office of Mr. Herrin and Mr. Shay, as his assist-
ant, took charge of it.  What then occurred, and how the letter
came to be written, may best be stated in the words of Mr. Shay
contained in his answer admitting the charge.  We quote as
follows:—

"In the absence of Mr. Herrin I went to the supreme court
chambers in the city of San Francisco, to submit the request of
Mr. McKinley for an order shortening the time for the hearing
of the return to the order to show cause issued on *ex parte*
application of said Boaz Duncan.  The Honorable W. H.
Beatty, chief justice of said court, was absent, and I was di-
rected to the chambers of Hon. F. W. Henshaw, acting chief
justice of said court.  I had given no personal attention there-
tofore to the Boaz Duncan matter, or to California Develop-
ment Company affairs, but knew generally the condition of
affairs in Imperial County, and the situation with reference to
the matters and things involved in the appointment of said
receiver.

"Mr. Justice Henshaw called in consultation Mr. Justice
Shaw and Mr. Justice Lorigan, and submitted to them the re-
quest for the order shortening time, in accordance with Mr.
McKinley's telegram.

"I informed the said justices that the request was based upon

the ground that any order of court prohibiting the issuance of receiver's certificates, or preventing the receiver from securing funds or from taking such other action as would be necessary to protect the lands in the Imperial Valley from flood water, or that would prevent the doing of work necessary to maintain the irrigating canals and ditches in the Imperial Valley, would cause great and perhaps irreparable damage to the settlers in said valley, and that, as I understood it, the issuance of receiver's certificates was the only way in which said receiver could secure the funds necessary at that time to carry on the work that was absolutely essential to the protection of the property-owners in the Imperial Valley, and that, as I understood it, there was grave and imminent danger from flood-waters which threatened the entire valley, and that it was therefore essential that the question, as to whether the restraining order that had been issued by this court on the application of said Boaz Duncan should be made permanent or set aside, should be heard and determined at the earliest possible date. Because of these representations on my part to said justices of the said court, an order was made and entered by Justices Henshaw, Lorigan, Shaw, and Sloss, as follows:—

" 'By the court.

" 'Good cause appearing therefor, it is hereby ordered that the former order heretofore entered in the matter of the above-entitled proceeding, setting the same for hearing in Los Angeles, California, on Monday, the 11th day of April, 1910, at the hour of 2 o'clock P. M. of said day, be and the same is hereby vacated, and the said matter is set for hearing before the supreme court sitting in Bank, at San Francisco, upon Monday, the 4th day of April, 1910, at 10 o'clock A. M.

" 'Due notice of this order to be given forthwith.'

"Inasmuch as there was but little time intervening between March 28 and April 4, I asked and obtained permission to take the points and authorities that had been filed in support of said Boaz Duncan's petition, and send them to Mr. McKinley for his information, upon my promise that such points and authorities would be returned to the clerk on the day set for the hearing.

"As is customary in cases where the court makes an order on *ex parte* application, the reasons why such order was made were stated to me by one of the justices. I cannot now recall

who it was, but the statement, as I recall it, was to the effect that the application had been issued for the reason that there was a question in the minds of the court as to whether the complaint in the said action in said foreclosure suit was sufficient to justify or support the appointment of a receiver. Upon an examination of the points and authorities that had been submitted by the said Boaz Duncan in support of his petition, I saw that there was some ground for the averment in the petition as to the insufficiency of the allegations contained in paragraph V of the complaint in the foreclosure action hereinbefore mentioned. I made the remark at the time that this paragraph could be amended, and that if such amendment were made it would be an answer to the Boaz Duncan petition, but none of the justices at any time during my interview with them expressed any opinion concerning the legal questions involved, nor gave any intimation as to what rulings would or would not be made by the court.

"Upon my return to my office I dictated to a stenographer the letter to Mr. McKinley set forth in the order to show cause herein. When typed it was laid upon the desk of Mr. Murphy, the chief clerk of the law department of the Southern Pacific Company, who signed Mr. Herrin's name thereto, as is the general custom in Mr. Herrin's absence. Mr. Herrin never saw the letter, and his first knowledge of it, so far as I am aware, will be gained upon his return from Europe, where he now is.

"The said letter was hurriedly dictated, and contains statements which should not have been made. In it my own views and suggestions are given as if coming from the justices."

Mr. Shay is, and was when he wrote this letter, an attorney and counselor at law of this court. The letter was written in the course of his professional business. The code declares it to be the duty of an attorney "to maintain the respect due to the courts of justice and judicial officers." (Code Civ. Proc., sec. 282.) In section 1209, subdivision 3, it is provided that a violation of such duty by an attorney is a contempt of the authority of the court. This provision has been in the section ever since its first enactment in 1872. The section consists of thirteen subdivisions. In 1891 it was amended by adding at the end of subdivision 13, the following clause: "But, no speech or publication, reflecting upon, or concerning any court,

or any officer thereof, shall be treated or punished as a contempt of such court, unless made in the immediate presence of such court while in session, and in such a manner as to actually interfere with its proceedings." It is suggested that this clause so qualifies subdivision 3 that a violation of duty by an attorney, if done out of the immediate presence of the court, is not a punishable contempt. Mr. Shay disclaims the benefit of this clause. Nevertheless, we deem it our duty to consider its effect.

Under the admitted rules of statutory construction we think that the amendment was not intended to modify subdivision 3. That subdivision enumerates the following acts as contempts: "Misbehavior in office, or other willful neglect or violation of duty by an attorney, counsel, clerk, sheriff, coroner, or other person, appointed or elected to perform a judicial or ministerial service." The persons here named are all persons engaged in the service of the court, assisting it in the exercise of its jurisdiction, and in the performance of its functions. They are actually or potentially officers of the court. They stand in confidential relations toward the court, and in consequence thereof they owe to the court the duty of greater fidelity and respect than are due from other persons. It is apparent that such special duties may be violated by acts not done in the immediate presence of the court, and which would not influence the judges nor affect the proceedings, but which would tend to degrade the court in the minds of the people. If the persons thus immediately connected with the court do not observe proper respect toward it, or make statements derogatory to its character, the public regard and confidence would be much more affected than by similar behavior on the part of ordinary citizens not connected with the court or familiar with its proceedings. The court should have greater control of these persons than would be necessary with respect to ordinary citizens. It was for the purpose of giving to the court a means of protection against such attacks upon its character—attacks, as it were, from within, that this subdivision was enacted.

The amendment of 1891 was passed with different acts and persons in view, and to accomplish a different purpose. It was not intended to affect the power of the court to deal with its own officers for acts of disrespect in connection with their official positions. Its purpose obviously was to prevent the

punishment of ordinary citizens, not connected with the court nor owing to it any special duty of fidelity and respect, for any "speech or publication," in censure or abuse of the court or the justices thereof, made to other persons, or to the general public, or even to the justices themselves, in the exercise of the common privilege of free speech. The phrase, "speech or publication reflecting upon, or concerning any court," is indicative of this intent and purpose. The amendment is general in its terms, and does not refer to any particular class of persons. Subdivision 3, on the contrary, is special, and is confined to the officers therein named. It is only by implication, and because of the seeming inconsistency, that the amendment can be said to affect subdivision 3, "Repeal by implication is not favored and the conflict must be irreconcilable, or the intent to repeal very manifest, or both statutes will stand." (*Malone* v. *Bosch*, 104 Cal. 683, [38 Pac. 517].) "It is also the rule that where two statutes treat of the same subject, one being special and the other general, unless they are irreconcilably inconsistent, the latter, although latest in date, will not be held to have repealed the former, but the special act will prevail in its application to the subject-matter as far as coming within its particular provisions." (*People* v. *Pacific I. Co.*, 130 Cal. 446, [62 Pac. 740].) In the light of these rules of construction it is clear that the amendment of 1891 should not be held to work an implied repeal of the special provisions of subdivision 3 regarding the power of the court over its own officers.

That the writing and publication of the letter, if the false statements therein made were believed, would cast discredit upon this court and the justices thereof, cannot be denied. It falsely imputes to the justices of this court improper conduct of which they are entirely innocent. Whether made wittingly, or through sheer inadvertence or carelessness, it was a grave breach of his duty as an attorney, on the part of Mr. Shay. Apparently it was not intended to be made public. Its recent publication does not appear to have been made at the instance of Mr. Shay, or Mr. McKinley, but rather against their wish and will. This fact somewhat palliates the offense. But the writing of such a letter made the publication possible. Its untruthful statements are well calculated to create the false impression that the members of this court are on terms of undue intimacy with powerful litigants. Such a false impres-

sion is most mischievous, and must tend greatly to impair the confidence of the people in the integrity of the court. To attempt to create such an impression, even to a few individuals, is a serious violation of duty by one upon whom the law enjoins the utmost fidelity and vigilance to preserve the court and its justices from even the appearance of evil.

It is considered by the court that the said Frank Shay is guilty of contempt as charged, and that, as a punishment therefor, he pay a fine of five hundred dollars, and that in default of payment thereof he stand committed until such fine is paid, at the rate of one day of imprisonment for every two dollars of the fine.

Sloss, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.

ANGELLOTTI, J., dissenting.—I am unable to concur in the judgment. I wholly concur in what is said in the opinion to the effect that the respondent was guilty of a grave breach of duty as an attorney, and have no doubt that he could be proceeded against therefor under section 287 et seq. of the Code of Civil Procedure, wherein it is provided that an attorney and counselor may be removed or suspended for various causes, including a violation of his duties as attorney and counselor. But in view of the amendment of 1891 to section 1209 of the Code of Civil Procedure, discussed in the opinion, I am of the opinion that his acts cannot "be treated or punished as a contempt" of court.

The amendment, reading as follows, viz.: "But no speech or publication reflecting upon or concerning any court or any officer thereof shall be treated or punished as a contempt of such court unless made in the immediate presence of such court while in session and in such a manner as to actually interfere with its proceedings," while made a part of subdivision 13 of section 1209, cannot be restricted in its effect to such subdivision, for, in view of the subject-matter thereof, viz.: practicing law or holding one's self out as entitled to practice law, without a license, it would be meaningless and entirely without force if so restricted. It was clearly intended as a general rule, applicable to every possible charge of contempt, prohibiting courts from treating or punishing as contempts any mere speech or publication reflecting upon or concerning any court

or officer thereof, unless made in the immediate presence of such court while in session and in such a manner as to actually interfere with its proceedings, and in effect providing that anything to the contrary theretofore appearing in the section notwithstanding, no such speech or publication should be treated or punished as a contempt of court. I cannot perceive in the language used any warrant for a different construction, and if the only "violation of duty by an attorney" (Code Civ. Proc. sec. 1209, subd. 3) is the making of a speech or publication reflecting upon a court and its members, not in the presence of the court while in session and not in such manner as to actually interfere with its proceedings, the case, to my mind, falls within the purview of the amendment.

It may freely be admitted that this court and the other courts which are established by the constitution have the inherent authority, under the constitution and independent of statute, to prevent interference with the exercise of the powers confided to them, and the enforcement of their orders, judgments, and decrees, and that such authority cannot be taken away or unreasonably restricted by the legislature. It may also be conceded that a speech or publication may be made under such circumstances, although not made in the presence of the court while in session, that it would actually interfere with the proper exercise of its powers by the court in a proceeding pending before it. As to such a case, the power of the legislature to unreasonably limit the court by prohibiting any punishment of the guilty person may well be doubted. But the case at bar is admittedly not such a case. The letter written by respondent was not designed to affect the action of the court in any matter pending before it, and could not possibly have such effect, or interfere in any degree with the action of the court or the enforcement of any order it might make in any proceeding. It was a mere private communication to another party, and the sum and substance of its offending was that it contained false statements reflecting discreditably upon the members of this court. A court has no inherent power to punish such acts as contempts, for they do not actually interfere with the exercise of the powers confided to it by the constitution. In the absence of statute authorizing other method, the remedy of a judicial officer who is merely assailed by slanderous or libelous statement is the same as

that of any other citizen. It is, however, within the province of the legislature to provide that acts, speeches, or publications not actually interfering with the exercise of its powers by a court shall constitute a contempt and be punishable as such, but with respect to such acts, the legislature likewise has the power to modify any provision so made in such manner as it sees fit. When such an act is made a contempt by statute, it is a contempt solely because the statute so provides, and any change in the statute removing such an act from the category of contempts, divests it of that character. To my mind, the amendment of section 1209 of the Code of Civil Procedure, in 1891, divested such acts as that of which respondent was guilty, of the character of a "contempt of court," and makes it impossible for us to treat or punish it as such a contempt.

Beatty, C. J., concurred.