[Civ. No. 26795. Second Dist., Div. Two. June 27, 1963.]

ROCKLITE PRODUCTS et al., Plaintiffs and Appellants, v. THE MUNICIPAL COURT FOR THE LOS ANGELES JUDICIAL DISTRICT OF LOS ANGELES COUNTY, Defendant and Respondent; THE PEOPLE, Real Party in Interest and Respondent.

William T. Selby, Ben K. Ashby and Leighton G. Long for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

Stanley Mosk, Attorney General, Vincent W. Thorpe and Otto J. Hetzel, Deputy Attorneys General, for Real Party in Interest and Respondent.

HERNDON, J.—This appeal is taken from a judgment discharging an alternative writ of prohibition and denying appellants' petition for a peremptory writ.

Appellants and others were named as defendants in an action brought by the Attorney General in the Los Angeles Municipal Court. Appellants demurred to the complaint and moved for its dismissal on the ground of lack of jurisdiction. These demurrers were overruled, the motions were denied and appellants were ordered to file their answers to the complaint.

By the instant proceeding in the superior court, appellants sought to restrain the municipal court from taking further proceedings. It was stipulated that there were no material issues of fact and that no proof was necessary because the facts alleged in appellants' petitions were un-

disputed. Therefore, the issues presented to the court below and to this court are issues of law only.

By way of their assignment of error, appellants make the following contentions: (1) that the municipal court does not have jurisdiction over criminal prosecutions relating to violations of the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.); (2) that the complaint filed in the municipal court does not state a criminal offense; and, (3) that at the time alleged in the complaint, the Cartwright Act was unconstitutional. We find no merit in any of these contentions.

Appellants' arguments in support of their claim of unconstitutionality are essentially as follows: (1) a Colorado statute containing provisions substantially the same as those found in section 16723[1] has been held to be too vague to permit of constitutional enforcement (*Cline* v. *Frink Dairy Co.*, 274 U.S. 445 [47 S.Ct. 681, 71 L.Ed. 1146]); (2) the provisions of section 16723 are necessarily included within the definition of "illegal trusts" as set forth in section 16720[2] by

---

[1] Section 16723, Business and Professions Code, was repealed by Statutes 1961, chapter 796, section 1, effective September 15, 1961, prior to the filing of the complaint herein but subsequent to the commission of the acts alleged therein. It provided: "No agreement, combination or association is unlawful or within the provisions of this chapter, the object and purpose of which are to conduct operations at a reasonable profit or to market at a reasonable profit those products which can not otherwise be so marketed."

[2] Section 16720, Business and Professions Code, provides: "A trust is a combination of capital, skill or acts by two or more persons for any of the following purposes: (a) To create or carry out restrictions in trade or commerce. (b) To limit or reduce the production, or increase the price of merchandise or of any commodity. (c) To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity. (d) To fix at any standard or figure, whereby its price to the public or consumer shall be in any manner controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, barter, use or consumption in this State. (e) To make or enter into or execute or carry out any contracts, obligations or agreements of any kind or description, by which they do all or any or any combination of any of the following: (1) Bind themselves not to sell, dispose of or transport any article or any commodity or any article of trade, use, merchandise, commerce or consumption below a common standard figure, or fixed value. (2) Agree in any manner to keep the price of such article, commodity or transportation at a fixed or graduated figure. (3) Establish or settle the price of any article, commodity or transportation between them or themselves and others, so as directly or indirectly to preclude a free and unrestricted competition among themselves, or any purchasers or consumers in the sale or transportation of any such article or commodity. (4) Agree to pool, combine or directly or indirectly unite any interests that they may have connected with the sale or transportation of any such article or commodity, that its price might in any manner be affected."

reason of the exception provided for in section 16726[3]; and (3) it follows, therefore, that the entire act is unconstitutional.

■ Twice this identical argument has been made to our Supreme Court and twice it has been squarely rejected. (*People* v. *Building Maintenance etc. Assn.*, 41 Cal.2d 719, 723-726 [264 P.2d 31]; and *Speegle* v. *Board of Fire Underwriters*, 29 Cal.2d 34, 46-48 [172 P.2d 867].) In each instance it was held that because the exemption created by section 16723 was added to the statute by amendment, it was *separable* from the rest of the act and therefore its unconstitutional vagueness invalidated only the exemption provision and not the act itself. It is to be emphasized at the outset that the action filed by the Attorney General which is here involved was filed after the effective date of the 1961 amendments of the Cartwright Act.

No useful purpose would be served by repeating here the excellent and comprehensive analyses of the arguments set forth in the cited decisions. ■ While it is true that the appeals in those cases involved *civil* actions, logic dictates that the rule that "an invalid amendment to a valid statute is ineffective *for any purpose* [citations]" (italics added) (*People* v. *Building Maintenance etc. Assn., supra*, p. 726), must apply with equal force to criminal actions.

Appellants' contention regarding the lack of the jurisdiction of the municipal court over criminal prosecutions for violations of the act is based upon their interpretation of language found in section 16754[4] as amended in 1961. Prior to the 1961 amendments to the act, section 16750[5] provided for

---

[3]Section 16726, Business and Professions Code, provides: "Except as provided in this chapter, every trust is unlawful, against public policy and void."

[4]Section 16754, Business and Professions Code, as amended in 1961 provides: "The Attorney General, or the district attorney of any county on the order of the Attorney General, shall initiate civil actions or criminal proceedings for violation of this chapter. Civil actions and criminal proceedings for violation of this chapter initiated by the Attorney General or on his order may be brought in the superior court in and for any county where the offense or any part thereof is committed or where any of the offenders reside or where any corporate defendant does business."

[5]Section 16750, with the 1961 amendments thereto italicized, provides: "(a) Any person who is injured in his business or property by reason of anything forbidden or declared unlawful by this chapter, may sue therefor in any court having jurisdiction in the county where the defendant resides or is found, or any agent resides or is found, or where service may be obtained, without respect to the amount in controversy, and to recover three times the damages sustained by him, and shall be awarded a reasonable attorneys fee together with the costs of suit.

"The amendments to this section adopted at the 1959 Regular Session

the recovery of treble damages by any person injured in his business or property as the result of any violation of the act, and section 16754[6] provided for prosecutions by the Attorney General, to recover a forfeiture of $50 per day from any person who violated the act.

Section 16750 was amended in 1961 to declare specifically that "[t]he State and any of its political subdivisions and public agencies shall be deemed a person within the meaning of this section" and to authorize the Attorney General to maintain actions thereunder to recover the specified damages on behalf of these governmental bodies. Section 16754 was amended to eliminate the prior forfeiture provisions thereof and to provide that the Attorney General, or a district attorney on the order of the Attorney General, "shall initiate civil actions or criminal proceedings for violation of this chapter."

 It appears to be appellants' contention that because the Legislature saw fit to retain the expression found in former section 16754 regarding initiating actions thereunder "in the superior court" in the new section 16754, that it meant to render nugatory the express provisions of amended section 16750 that civil actions may be brought *"in any court having jurisdiction* in the county where,*"* etc. (italics added) and to create by implication an exception to section 1462 of the

---

of the Legislature do not apply to any action commenced prior to September 18, 1959.

"(b) *The State and any of its political subdivisions and public agencies shall be deemed a person within the meaning of this section.*

"(c) *The Attorney General may bring an action on behalf of the State or of any of its political subdivisions or public agencies to recover the damages provided for by this section, or by any comparable provision of federal law, provided that the Attorney General shall notify in writing any political subdivision or public agency of his intention to bring any such action on its behalf, and at any time within 30 days thereafter, such political subdivision or public agency may, by formal resolution of its governing body or as otherwise specifically provided by applicable law, withdraw the authority of the Attorney General to bring the intended action."*

[6]Section 16754, Business and Professions Code, prior to the 1961 amendment provided: "Every person who violates this chapter shall for each day that such violations are committed or continued, after due notice given by the Attorney General or any district attorney, forfeit and pay the sum of fifty dollars ($50), which may be recovered in the name of the people of this State in any county where the offense is committed, or where either of the offenders resides. The Attorney General, or the district attorney of any county on the order of the Attorney General, shall prosecute for the recovery of the forfeit. When the action is prosecuted by the Attorney General against a corporation or an association of persons, he may begin the action in the superior court in and for the county where the defendant resides or does business."

Penal Code providing that in counties having municipal courts such courts shall have jurisdiction over misdemeanor prosecutions. This contention is wholly without merit.

Article VI, section 5, of the California Constitution provides that the superior courts shall have original jurisdiction in "cases of misdemeanor not otherwise provided for." Violations of the provisions of the Cartwright Act constitute misdemeanors (§ 16755), and, in counties having inferior courts with appropriate misdemeanor jurisdiction, prosecutions therefor shall be had therein (*Union Ice Co.* v. *Rose,* 11 Cal.App. 357, 359-364 [104 P. 1006]), but in counties *lacking* such inferior courts, prosecutions shall be had in the superior court (*People* v. *Sacramento Butchers' Protective Assn.,* 12 Cal.App. 471, 487-490 [107 P. 712]).

Therefore the mere statement in section 16754 that criminal proceedings "*may* be brought in the superior court," the court having original jurisdiction in all such misdemeanor prosecutions "not otherwise provided for," falls far short of a showing of a legislative intent thereby to terminate the jurisdiction of inferior courts "otherwise provided for" in section 1462, Penal Code.

Appellants argue in effect that we should regard the amendment of section 16754 as being the equivalent of the specific amendment of section 1462, Penal Code, in 1929 which created an exception to the jurisdiction over misdemeanors otherwise granted the municipal court therein, in cases in which the juvenile court is given jurisdiction. (Cf. *In re Gamo,* 122 Cal.App. 725, 729 [10 P.2d 770].)

This we cannot do for two reasons. First, as our Supreme Court noted in connection with a somewhat analogous situation, "The word 'may' is not usually construed as laying down an absolute requirement. The statute [Pen. Code, § 182] does not, therefore, state a legislative intention to give exclusive jurisdiction to the superior court of all prosecutions based upon an asserted conspiracy and, for that reason, does not fall within the exception stated in section 1425 [Penal Code relating to jurisdiction of Justice Courts]." (*In re Williamson,* 43 Cal.2d 651, 655-656 [276 P.2d 593].)

Secondly, as noted by the trial court in its memorandum opinion, the same 1961 legislative session that enacted Assembly Bill 897 amending section 16754, had before it Assembly Bill 895 which would have amended Penal Code section 1462 by adding thereto the words "except those arising out of Chapter 2 and 4 of Division 7, Part 2 of the Business and

Professions Code." But this bill was not enacted into law. ██ "Recourse to legislative history is proper for the purpose of ascertaining the intent in enacting legislation where there is a question with respect to that intention. [Citations]." (*People* v. *Superior Court,* 199 Cal.App.2d 303, 310 [18 Cal.Rptr. 557].) ██ That the Legislature was cognizant of the possible propriety of amending section 1462 is clear and its rejection of an express provision to that effect is a very persuasive indication of the legislative intent. ██ "It cannot be inferred that the Legislature intended to do indirectly what it refrained from doing directly." (*People* v. *Superior Court, supra,* p. 308.)

We must now comment briefly on appellants' novel arguments in support of their final contention that "the complaint does not state a criminal offense." Appellants, of course, do not assert that the complaint fails to state facts sufficient to constitute a public offense or that it does not comply with section 16756[7] of the Business and Professions Code. Any such assertion obviously would be futile, for the complaint not only contains "the words of the enactment describing the offense" (Pen. Code, § 952), but it also sets forth facts that concisely but comprehensively describe the acts of appellants which are alleged to have constituted the violations charged therein.

Rather, it is appellants' contention that although the individual defendants were arrested on warrants on which the bail was set at $500 and the corporate defendant was served with a "Summons on a Criminal Complaint," and notwithstanding that the defendants, both individual and corporate, were given copies of the document captioned "Criminal Complaint" which charged the violations as above described, they nevertheless are unable to determine whether the action is civil or criminal in nature. This assertion is made even though the criminal complaint concludes as follows:

"All of which is contrary to the law in such cases made and provided, and against the peace and dignity of the People of the State of California. Said plaintiff therefore prays that a warrant may be issued for the arrest of said individual

---

[7]Section 16756, Business and Professions Code, provides: "In any indictment, information or complaint for any offense named in this chapter, it is sufficient to state the purpose or effects of the trust or combination, and that the accused is a member of, acted with, or in pursuance of it, or aided or assisted in carrying out its purposes, without giving its name or description, or how, when and where it was created."

defendants and that a summons may be issued for the appearance of each business entity and that each of them may be dealt with according to law.''

In an attempt to add some semblance of substance to these arguments, appellants argue that, although the complaint charges them with violating section 16720, subdivisions (a), (b), (c), (d), (e)(1), (e)(2), (e)(3), and section 16726 of the Business and Professions Code, it does not refer to section 16755 which prescribes the punishment for such violations. ■ There is no requirement that in charging an offense reference must be made to the statute prescribing the punishment therefor. ■ A defendant is entitled to ''notice of the offense of which he is accused'' and the charging statement need not contain ''any allegations of matter not essential to be proved.'' (Pen. Code, § 952.)

■ In connection with this assignment, appellants also assert that the complaint is not sufficient because it does not comply with Penal Code section 959, subdivision 3, which requires that an accusatory pleading be ''made and subscribed by some natural person. . . .'' They argue that the typed name, ''Stanley Mosk'' preceding his designation as ''Attorney General,'' and the signatures of five of his deputies, which appear below the verification of the complaint, do not constitute the subscriptions of ''natural persons'' since each name is followed by a designation of the signer's official capacity. Appellants, of course, cite no authority in support of this unusual proposition. A complete answer thereto would appear to be supplied by the almost self-evident observation that when the Legislature has provided *who* shall initiate certain criminal actions (Bus. & Prof. Code, § 16754), and also *how* all criminal actions shall be initiated (Pen. Code, § 959), it did not intend that the language used in the general section be given an interpretation that would deny the party specified in the special act the power to fulfill the commandments thereof.

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied July 23, 1963, and appellants' petition for a hearing by the Supreme Court was denied August 20, 1963.