[Civ. No. 21699.   First Dist., Div. Two.   Nov. 17, 1964.]

BRENDA R. HELLER, Plaintiff and Respondent, v. ROBERT D. HELLER, Defendant and Appellant.

Philip S. Ehrlich and Irving Rovens for Defendant and Appellant.

James C. Purcell for Plaintiff and Respondent.

TAYLOR, J.—This is an appeal by defendant husband from a minute order dated June 6, 1963, awarding plaintiff attorney fees and expenses in this action, and a formal order dated June 12, 1963, directing him to pay certain sums to plaintiff wife as provided for in the property settlement agreement of the parties. Defendant argues that both orders must be reversed because the court exceeded its jurisdiction and erroneously interpreted the agreement. Plaintiff argues that the trial court acted within its jurisdiction and properly construed the agreement and that, in any event, the appeal must be dismissed as it is taken from orders in a contempt proceeding.

We first determine whether the orders in question are appealable. ■ The preliminary minute order of June 6, 1963, directing the payment of attorney fees and expenses in this action was merged in the formal order of June 12, 1963, and the appeal therefrom must, therefore, be dismissed (3 Witkin, Cal. Procedure (1954) § 19 [1963 Supp. p. 715]; *Sproul* v. *Cuddy*, 121 Cal.App.2d 197 [263 P.2d 92]).

■ Contempt orders are not appealable (Code Civ. Proc.,

§ 1222; *Travis* v. *Travis,* 89 Cal.App.2d 291 [200 P.2d 843]; *Tripp* v. *Tripp,* 190 Cal. 201, 202 [211 P. 225]), but can be reviewed only by writs of certiorari (*Grant* v. *Superior Court,* 214 Cal.App.2d 15, 19 [29 Cal.Rptr. 125]), habeas corpus or prohibition (*Smith* v. *Habegger,* 213 Cal.App.2d 183 [28 Cal.Rptr. 646]). ▮ Although this proceeding was initiated by an order to show cause directed to the contempt powers of the court, the formal order specifically states that the ". . . defendant, in making said deductions, was acting in good faith and not in contempt. . . ." Thus, we are not concerned with a contempt order reviewable by writ. The order is one directing the payment of money and is appealable as a special order after judgment (Code Civ. Proc., § 963, subd. 2; 3 Witkin, Cal. Procedure (1954) § 23, p. 2167; *Orloff* v. *Orloff,* 144 Cal.App.2d 541 [301 P.2d 293]).

The record discloses that on November 30, 1962, plaintiff and defendant entered into an agreement ". . . to reach a final settlement of their rights and duties, both with respect to property and property rights and maintenance and support of the wife and the minor child of the parties." Paragraph 2 of the agreement obligates defendant to pay plaintiff $650 per month commencing January 1, 1963, for her support and maintenance for a period of six years, such payments to continue even if plaintiff remarries during the six-year period. Paragraph 4,[1] quoted below, deals with the tax matter that led to this action. Paragraph 13 provides for attorney fees in case of breach of the agreement. On January 7, 1963, an interlocutory decree of divorce was entered in plaintiff's favor, approving and incorporating the agreement and ordering the performance of its terms. Both parties agree that we are here concerned with an integrated property settlement agreement.

Plaintiff instituted this proceeding by filing an affidavit for an order to show cause why defendant should not be held

---

[1] "4. *Tax Matters:* Husband and wife agree to file joint federal and state income tax returns for the years 1962 and 1963 if permitted to do so by the Internal Revenue Code and the Revenue and Taxation Code of the State of California. Wife agrees to pay all capital gains taxes on the sale by wife of her interest in that certain real property commonly known and described as 640 Mason Street, San Francisco, California. Husband agrees to pay the income tax due, if any, on that certain $1,200 dividend received by wife in the year 1961 upon stock belonging to wife in the Gumbiner Amusement Company upon proof that said dividend was received by wife and in the event that said dividend was not included in the joint income tax return filed by husband and wife for the year 1961. Husband and wife agree to join in any necessary amendment of said return if the same failed to include said dividend herein referred to."

in contempt of court for his failure to pay the full amount of $650 for her support for April, May and June 1963. Her affidavit alleged that defendant had forwarded checks in the amounts of $350 for April, $350 for May and $469.79 for June, Defendant's opposing affidavit alleged that he had the right to reduce plaintiff's support payments for the three months in question to reimburse himself for an additional federal income tax liability of $780.21, which he had been forced to pay on the Gumbiner Amusement Company stock dividend, mentioned in paragraph 4 of the agreement. He contends that the dividend check was received by plaintiff in 1962 and that the agreement required him to pay the tax only if she received it in 1961.

After a hearing attended by both sides on June 6, 1963, the court found in favor of plaintiff and ordered defendant to pay the balance due for April, May and June, as well as attorney fees of $250 and $30 for expenses incurred by plaintiff in coming to San Francisco from Los Angeles for the hearing in this matter.

Defendant, relying on *Bradley* v. *Superior Court,* 48 Cal.2d 509 [310 P.2d 634], *Plumer* v. *Superior Court,* 50 Cal.2d 631 [328 P.2d 193], and *Hull* v. *Superior Court,* 54 Cal.2d 139 [5 Cal.Rptr. 1, 352 P.2d 161], argues that plaintiff cannot use contempt proceedings to enforce the provisions for the wife's support and maintenance contained in the integrated property settlement agreement. However, we have concluded that the support and maintenance clause is subject to the 1961 amendment to section 139 of the Civil Code and that it is, therefore, modifiable by the court and enforceable by contempt.

In *Bradley* v. *Superior Court, supra,* decided in 1957, a Nevada divorce decree was established in California by action and decree of the superior court ordering the parties to perform. After a determination on appeal (*Lane* v. *Bradley,* 124 Cal.App.2d 661 [268 P.2d 1092]) that the parties had made an integrated unseverable property settlement and that the payments were not alimony, the husband was found in contempt. The contempt order was annulled on certiorari by the Supreme Court as "... payments provided in a property settlement agreement which are found to constitute an adjustment of property interests, rather than a severable provision for alimony, should be held to fall within the constitutional proscription against imprisonment for debt." (P. 522.) The court continued: "... if the obligation sought

to be enforced is contractual and negotiated, as distinguished from marital and imposed by law, even though the contract relates to marriage obligations, the remedy must be appropriate to the right asserted. Payments which fall into the category of law-imposed alimony or separate maintenance are based upon the statutory obligation of marital support, and may be modified by the court upon a proper showing . . . and may properly be held not to constitute a 'debt' within the meaning of the constitutional provision.'' (P. 522.) The court relied on the prior determination that the payments were an integral part of an adjustment of the property rights to hold that section 139 of the Civil Code did not apply. The holdings in the *Hull* and *Plumer* cases, *supra,* were to the same effect.

However, in 1959, the second paragraph of section 139 of the Civil Code was amended and the first two paragraphs of said section then read as follows (amendment italicized): ''In any interlocutory or final decree of divorce or in any final judgment or decree in an action for separate maintenance, the court may compel the party against whom the decree or judgment is granted to make such suitable allowance for support and maintenance of the other party for his or her life, or for such shorter period as the court may deem just, having regard for the circumstances of the respective parties and also to make suitable allowance for the support, maintenance and education of the children of said marriage during their minority, specifying in such judgment or decree the name, age and amount of support for each child, and said decree or judgment may be enforced by the court by execution or by such order or orders as in its discretion it may from time to time deem necessary.

''That portion of the decree or judgment making any such allowance or allowances, and the order or orders of the court to enforce the same, *including any order for support of children based on a provision for such support in an integrated property settlement agreement,* may be modified or revoked at any time at the discretion of the court except as to any amount that may have accrued prior to the order of modification or revocation.'' (Stats. 1959, ch. 1399, § 1.) (Italics supplied.)

A third paragraph provided that the amendment applied only to property settlement agreements entered into after the effective date thereof.

Thus, after the 1959 amendment, child support orders based on integrated agreements executed subsequent to September

18, 1959, were modifiable but support payments for the wife remained unmodifiable (34 State Bar J. 581 at p. 590).

In 1961, the provision in the second paragraph of section 139 that a child support order in an integrated agreement may be modified was augmented by the addition of the following language "or order for support of the other party"[2] (Stats. 1961, ch. 2098, § 1), and the following qualification added to the end of the paragraph, "This paragraph shall not be construed to render an integrated property settlement agreement modifiable when there are no minor children of the parties to the agreement." Although the precise meaning of these amendments was not clear (see 36 State Bar J. 671; 3 Witkin, Summary of Cal. Law (1960) § 135, p. 2678—§ 145, p. 2684; 2 The California Family Lawyer (1963) (Cont. Ed. Bar) § 26.17, pp. 1178-1179), their effect would seem to destroy the entire rule against modification of integrated agreements announced by the *Bradley, Hull* and *Plumer* cases except where the parties had no minor children. As no effective date was prescribed for the 1961 amendments, they presumably apply only to agreements executed after they became law on September 15, 1961. (See *Taliaferro* v. *Taliaferro,* 200 Cal.App.2d 190, fn. 2 [19 Cal.Rptr. 220].)

In 1963, section 139 of the Civil Code was again amended by repealing both portions of the 1961 amendment and restoring the section to its original 1959 form. (Stats. 1963, ch. 861, § 1.) However, the repeal was expressly made nonretroactive by providing that the 1963 amendments apply only to agreements ". . . entered into after the effective date of such amendments." (Stats. 1963, ch. 861, § 2.) Thus, the effect of the 1963 amendment was to return the section to its status before 1961 but integrated agreements executed between the effective date of the 1961 amendment [September 15, 1961] and the effective date of the nonretroactive 1963 amendment [September 20, 1963] are still governed by the 1961 legislation. (38 State Bar J. p. 637.) The agreement in the instant case was executed in November 1962 and the parties had a minor child. The order directing defendant to pay plaintiff was an order for the support of the party obtaining the divorce. Thus, the requirements of the 1961 amendments were met.

The defendant argues that the 1961 amendments are

---

[2]By the use of these words in reference to an integrated agreement in the second paragraph, the amendment refers to an order under the first paragraph of section 139.

without effect in view of the holding of the *Bradley* case that contempt proceedings cannot be used to enforce a contractual obligation because of the constitutional provision against imprisonment for debt. However, because of the state's interest in the marital relationship, the rights and duties relating to the support and maintenance of the wife and children on termination of the marriage are properly matters of legislative concern. By the passage of the 1961 amendments, the Legislature deliberately based the separate maintenance of the wife, where the parties have a child, on the statutory obligation of marital support even in cases of integrated agreements and thus, the support provision became subject to court modification and enforcement by contempt. Furthermore, any possible infringement of the constitutional proscription is avoided since the amendments in question were prospective rather than retroactive. We conclude that the trial court in the instant proceedings had the power to modify the agreement by ordering defendant to pay the full amount indicated as well as attorney fees and expenses.

█ Finally, we briefly consider defendant's contentions on the merits. He first argues that the trial court erred in construing the property settlement agreement because under paragraph 4, his obligation to pay the tax on the dividend in question was expressly conditioned on respondent's proof that she had received it in 1961. While respondent indicated at the hearing that she had actually received the dividend in 1962, there was uncontroverted evidence that the dividend was declared in 1961 and taxable as income in that year.[3] The record showed that the purpose of paragraph 4 was to settle and adjust *tax liabilities* of the parties for 1961, 1962 and 1963. The court acted within its discretion in concluding that paragraph 4 required defendant to pay the tax on the stock dividend (cf. *Addison* v. *Addison*, *(Cal.App.) 40 Cal. Rptr. 330).

█ As to the award of attorney fees and expenses, defendant argues that the court exceeded its discretion as plaintiff did not introduce any evidence establishing her need for financial assistance, citing *Goto* v. *Goto*, 187 Cal.App.2d 603 [10 Cal.Rptr. 20], and *Spreckles* v. *Spreckles*, 111 Cal.App.

---

[3]The parties did not separate until November 1962 so that in 1961, they were still living together and filed a joint federal income tax return for that year.

*Reporter's Note: A hearing was granted by the Supreme Court on October 15, 1964. The final opinion of that court is reported in 62 Cal.2d —— [43 Cal.Rptr. 97, 399 P.2d 897].

2d 529 [244 P.2d 917]. Neither of these authorities is relevant here as in *Goto*, the court denied the father's motion to terminate a trust created in favor of the minor child of the parties, while in the *Spreckles* case, the plaintiff failed to establish the necessity for alimony pendente lite, as her independent income was sufficient. Defendant did not offer any evidence to contradict plaintiff's testimony that apart from interest on a savings account, the support payments were her only income and that she lacked the means to pay attorney fees and expenses in this action.

The order of June 12, 1963, is affirmed and the appeal from the minute order of June 6 dismissed.

Shoemaker, P. J., and Agee, J., concurred.