[Civ. No. 31697.   Second Dist., Div. One.   May 13, 1968.]

RUTH ANN TREMAYNE, Plaintiff and Respondent, v. DANIEL CHARLES STRIEPEKE, Defendant and Appellant.

Sands & Schaffer, Leonard S. Sands and Nelson J. Farran for Defendant and Appellant.

Melvyn Mason and Harry L. Mason for Plaintiff and Respondent.

LILLIE, J.—Defendant, plaintiff's former husband, appeals from a judgment in a declaratory relief action which determined that under a property settlement agreement and a supplement thereto, executed by the parties in connection with their divorce proceedings, he was obligated to continue support payments to plaintiff for a period of ten years and thirty days ending on January 21, 1972, notwithstanding her remarriage in 1963. The judgment was also against defendant on his cross-complaint which sought $1,200, his agreed share of the proceeds from the sale of certain realty; however, since the trial court found that plaintiff has undertaken to give defendant credit therefor, that phase of the litigation requires no formal consideration.

Certain background facts are without dispute. The parties, parents of two children born in 1953 and 1956, respectively, separated on May 9, 1960. On that date they entered into a property settlement agreement which, after reference to the pendency of a divorce proceeding instituted by the wife, made provision under separate paragraphs for (1) the support of the children, (2) a division of the community property and (3) support of the wife. In addition the husband agreed to assume and pay certain debts and other obligations. By virtue of (3), *supra,* defendant-husband committed himself to make payments of $200.00 monthly (in two installments) which ''shall continue during the joint lives of husband and wife and until wife shall re-marry, or they shall cease on the death of husband or on the death or re-marriage of wife.'' The interlocutory decree, entered on July 27, 1960, adopted (among other things) the above quoted portions of the agreement; the final decree (entered August 8, 1961) made binding any and all provisions in the interlocutory judgment with respect to (1), (2) and (3), *supra.*

More than four months later, on December 21, 1961, the parties entered into a supplement to the original agreement. In pertinent part it provided that the payment of alimony should terminate ten years and thirty days after the execution of the supplement; it further provided that the supplement as well as the original statement ''be deemed integrated and it is the express intention of the parties that this Supplement and the original Property Settlement Agreement shall not be modified in any respect, except by the written agreement of both parties or upon order of Court.'' On January 15, 1962, pursuant to stipulation of the parties' attorneys, the court

made its order modifying the interlocutory and final decrees and ordered defendant to pay the specified support sums for the period stated in the supplement.

On October 18, 1963, plaintiff remarried and defendant ceased making support payments. Such cessation of payments precipitated the present action by plaintiff-wife for a judicial declaration of her rights in the premises.

Extrinsic evidence in aid of the instruments' interpretation, consisting of testimony by each of the parties to the action, was received. Thereafter the court made findings that both the original agreement and its supplement were integrated agreements and that the parties thereunder intended to provide that support payments not terminate upon plaintiff's remarriage; from such findings the court drew conclusions of law, similarly favorable to plaintiff, including the conclusion that the requirements of section 139, Civil Code, were satisfied by the provisions just mentioned regarding support payments.[1]

Defendant contends that the original agreement and its supplement are nonintegrated and, therefore, modifiable; in the alternative, he invokes the reasoning of *Hilton* v. *McNitt*, 49 Cal.2d 79 [315 P.2d 1], where an agreement, though concededly integrated, was set aside for noncompliance with the 1951 amendment to section 139.

Since they involve not only property rights but rights and duties as to support, the agreements here are of the hybrid variety. ■ With respect thereto, in *Plumer* v. *Plumer*, 48 Cal.2d 820, 824-825 [313 P.2d 549], the court declared: "The possibility of modifying an order for support based on such an agreement without the consent of the parties, depends upon whether the provisions for division of property and the provisions for support are severable rather than integrated. If they are integrated the order may not be modified unless the parties have provided for or agreed to such a modification."

■ Continuing, "An agreement is integrated if the parties have agreed that the provisions relating to division of property and the provisions relating to support constitute reciprocal consideration. The support provisions are then necessarily part and parcel of a division of property. Such an agreement would be destroyed by subsequent modification of a support order based thereon, without the consent of the

---

[1]Section 139 declares *inter alia* that support provisions for the obligee spouse shall cease on remarriage unless otherwise agreed by the parties in writing.

parties. [Citations.] It is immaterial whether or not the marital property is divided equally. [Citations.] It is immaterial that the amount of the marital property is small. [Citation.] It is likewise immaterial that the agreement calls for payments for 'support' or 'alimony.' [Citation.] ''

■ Additional rules which aid in a determination of whether provisions for division of property and those for support are severable or are integrated are also set forth in *Plumer* (at page 825): ''An agreement providing that the purpose of the parties is to reach a final settlement of their rights and duties with respect to both property and support, that they intend each provision to be in consideration for each of the other provisions, and that they waive all rights arising out of the marital relationship except those expressly set out in the agreement, will be deemed conclusive evidence that the parties intended an integrated agreement. [Citations.] Even absent one or more of the foregoing provisions, there may be other proof that the parties intended an integrated agreement. [Citation.]''

It appears that the original agreement contains an introductory recital that the parties desire to settle and adjust their property rights and to provide for the support of wife and children. There then follows what is admittedly an equal division of the community property, and specific provision for the wife and children respectively. Under clause ''VIII. RELEASE OF RIGHTS,'' the parties agree to release the other from all liabilities and obligations and support except as expressly provided for; they further agree to waive all claims and interest against or in the estate of the other left at death. However, there is no provision in the original agreement—and this is emphasized by defendant—that the support provisions constitute reciprocal consideration for the property provisions which, under *Plumer*, would make the former ''necessarily part and parcel of a division of property.'' (*Supra,* p. 824.)[2]

■ Although there is such a recital in the supplement, defendant argues that the two instruments should be read together and construed collectively so as to give effect, as far as practicable, to every part of each; thus when so read, the result is other than that reached in the court below. The rule of construction relied on by defendant, is, of course, settled;

[2]But, as pointed out in *Roberts* v. *Roberts,* 226 Cal.App.2d 507, 517 [38 Cal.Rptr. 176], the *Plumer* agreement lacked the provisions just mentioned and yet it was there held that under the rules hereinabove quoted (from that decision) the agreement was clearly integrated.

but it is also recognized that a later instrument supersedes an earlier one whenever they are inconsistent. (*San Diego Constr. Co.* v. *Mannix,* 175 Cal. 548, 550 [166 P. 325].) Furthermore, if it be urged that there is no inconsistency between the two instruments in the above respect, under the supplement's clause "II. RECITALS," the parties declare that they "are desirous of modifying and clarifying said provisions of said [earlier] Property Settlement Agreement."

Extrinsic evidence was received as to the parties' respective interpretations of the several recitals (including that just mentioned) by them reduced to writing. Citing *Lifton* v. *Harshman,* 80 Cal.App.2d 422 [182 P.2d 222], defendant maintains that evidence of conversations leading up to the execution of the two agreements, particularly the later instrument, should be ignored as of no legal import; in support thereof the statement is also made in the brief of defendant that since counsel for both parties indicated to the court that they felt there was no ambiguity in both agreements, the court should have interpreted the two instruments as a matter of law without the aid of extrinsic evidence. The record does not wholly sustain such a sweeping claim. During a colloquy between the court and defendant's trial counsel as to the meaning of the words "or re-marriage," the latter stated: "I am saying, your Honor, that at the very worst from our position there is an ambiguity. If there is an ambiguity, then the Court should take testimony regarding the extrinsic circumstances." Thereafter such testimony was received, each party being extensively examined and cross-examined without objection to the matters thus elicited. Since "it is now settled in California that the admission of parol evidence cannot be objected to for the first time on appeal" (*Crummer* v. *Zalk,* 248 Cal.App.2d 794, 797 [57 Cal.Rptr. 185]), defendant's present point is unseasonably made. In *Crummer* the court makes reference to *Pao Ch'en Lee* v. *Gregoriou,* 50 Cal.2d 502 [326 P.2d 135], where it is held that the claimed error could have been raised in the trial court only by objection to the offer of evidence and the right to urge error is waived in the absence of such objection. (In *Pao Ch'en Lee* statements to the contrary in *Lifton* v. *Harshman* [defendant's authority] are disapproved.)

The testimony of the parties being in conflict, we are bound by the rule that any reasonable construction of the writings must be upheld. (*Alperson* v. *Mirisch Co.,* 250 Cal. App.2d 84, 94-95 [58 Cal.Rptr. 178].) Clearly, it cannot be

said that it was unreasonable for the court to determine that the parties intended an integrated agreement. Not only do the instruments bear the markings of agreements thus classified by reported cases, but (even though unnecessary that it do so) the supplement contains an express recital that it should so be considered. ▮ Too, we are bound (as was the trial court) by the settled rule that in case of uncertainty in a contract it is to be construed most strongly against the party who caused the claimed uncertainty to exist—the party drafting the instrument. (Civ. Code, § 1654; *McNeely* v. *Claremont Management Co.*, 210 Cal.App.2d 749, 753 [27 Cal.Rptr. 87].) Admittedly the supplement was drawn by defendant's counsel and sent by him to plaintiff's attorney for approval. (The original agreement was prepared by plaintiff's attorney who, it appears from a recital in the instrument, was then representing both parties "because of his or her own choosing.") Under the circumstances, it cannot properly be urged that the parties did not know what they said or said what they meant by the inclusion of language to the effect that the instrument be deemed an integrated one.

Nor is the judgment contrary to the holding in *Hilton* v. *McNitt, supra* (49 Cal.2d 79). In *Hilton* v. *McNitt,* the court was called upon to determine the effect upon a support agreement of section 139, Civil Code, as amended in 1951, declaring in part that "Except as otherwise agreed by the parties in writing, the obligation of any party in any decree, judgment or order for the support and maintenance of the other party shall terminate upon the death of the obligor or upon the remarriage of the other party." In *Hilton* the husband agreed to pay his wife $300 per month on the first day of each month "until the 1st day of July, 1956." He died in July 1954. The majority of the court held (three justices dissenting) that there must be an express statement that payments survive the obligor's death; the minority view was that by specifying payments until July 1, 1956, the parties did "otherwise agree." In our case there is a similar provision for support over a specified period, "ten years and 30 days," but with no reference to death or remarriage. Were it not for the subsequent history of *Hilton,* defendant's reliance thereon would have more compelling force. It appears from a later chapter in that litigation (*Hilton* v. *McNitt,* 200 Cal.App.2d 879, 884 [19 Cal.Rptr. 688]) that certain aspects of the case were not before the Supreme Court at the time of its decision, namely, the interpretation to be given the instrument in light

of its ambiguity. ■ As pointed out in the second *Hilton* decision (p. 885), and such is the situation at bar, the very fact that a party questions the meaning of certain words and clauses used in framing the agreement shows that it **was** ambiguous. As further stated in that case: ■ " 'When the language used in the contract is fairly susceptible to the construction claimed by one of the parties, extrinsic evidence may be considered, not to vary or modify the terms of the agreement, but to aid the court in ascertaining its true meaning. [Citation.]' " (P. 885.) Finally, as shown earlier, whenever the determination of the trial court as to such meaning is not unreasonable, this court is bound thereby.

■ Extensive testimony was received as to each party's meaning of the critical clause. Such evidence revealed that there were several meetings between the then spouses during the interval between the dates of the two agreements. She told him that she had no plans to remarry, in which event he would have been obligated for payments for the foreseeable future; defendant, on his part, apparently had other such plans (later carried out), and it is fairly inferable that he entered into the final arrangement with that thought in mind. This final arrangement, namely, the supplement, also relieved him from certain annual "balloon" payments aggregating some $4,000 on the parties' home which he quitclaimed to plaintiff in consideration of the sum of $1,200 payable from the proceeds of its sale. It is also significant that although the defendant undertook to continue payments of taxes on the home until its sale "or upon re-marriage of wife," in the very next sentence the parties made provision for the continued payments here challenged irrespective of her change in marital status. In *Rheuban* v. *Rheuban,* 238 Cal.App.2d 552 [47 Cal.Rptr. 884], the parties agreed upon payment of support for 128 months without use of the words "remarriage" or "death." The court concluded that the absence of such terms did not bring the agreement within the termination provisions of section 139 where there was other language in the instrument evidencing the parties' intention to waive any further claim for alimony and support. While perhaps not possessed of the finality characterizing the *Rheuban* agreement, the instruments in the present case are reasonably construable as a waiver of the right to modification in the absence of a written agreement to the contrary. It must be concluded that the determination here is not at variance with either the original *Hilton* decision or the provisions of section 139 as there interpreted.

Finally, defendant urges still another alternative reason for reversal by contending that under the 1961 amendment to section 139 the agreement in suit was expressly made modifiable. ▮ In fairness to the trial court, such contention does not appear to have been urged below; but it goes to the question of jurisdiction and must be considered even though raised for the first time on appeal. The provisions in such amendment here pertinent are thus summarized in *Heller* v. *Heller,* 230 Cal.App.2d 679, 685 [41 Cal.Rptr. 177] : "In 1961, the provision in the second paragraph of section 139 that a child support order in an integrated agreement may be modified was augmented by the addition of the following language 'or order for support of the other party' . . . and the following qualification added to the end of the paragraph, 'This paragraph shall not be construed to render an integrated property settlement agreement modifiable when there are no minor children of the parties to the agreement.' "[3] Admittedly the supplement ot the settlement agreement at bar was executed on November 21, 1961 (when the 1961 amendment was effective) and the parties had two minor children; too, the order made by the court, pursuant to the parties' stipulation and directing defendant to comply with the supplement's provisions, was likewise within the 1961 amendment's effective date (January 15, 1962).

▮ While, as pointed out in *Heller,* the 1961 amendment would seem to destroy the then existing rule against modification of certain integrated agreements, it was recently concluded in *Hecht* v. *Hecht,* 259 Cal.App.2d 1 [67 Cal.Rptr. 293] (hearing in Supreme Court denied) that the provisions of the 1961 amendment are inapplicable to installment payments which have been made an integral part of a settlement agreement. Citing *DiMarco* v. *DiMarco,* 60 Cal.2d 387, 392 [33 Cal.Rptr. 610, 385 P.2d 2], the court declared that such payments even though designated as being for support, are nevertheless not alimony "to the extent they represent a division of community property itself, or constitute an inseparable part of the consideration for the property settlement. . . ."
▮ As in our case, the alimony payments in *Hecht* were integrated in the agreement by an express recital to that effect

[3]There is this criticism of the amendatory enactment: "This language would appear to make the modifiability of an integrated agreement dealing with the property of the spouses dependent solely on the fortuitous (and often irrelevant) fact that there are children of the marriage." (Witkin, Summary Cal. Law (1965 Supp.) § 141, p. 948.)

and were continued until a definite sum had been paid; and as in *DiMarco,* the parties in the present proceeding undertook to release the other "from any and all liabilities, debts, or obligations, of every kind or character, heretofore or hereafter incurred," except as otherwise provided in the agreement. True, our case and *Hecht* are not otherwise factually apposite—rarely can it be said that two cases are "on all fours"; however, in the present proceeding the inferences reasonably deducible from the conflicting extrinsic evidence support the same determination made in *Hecht,* namely, that the payments were "a contribution to a division of property and are outside the scope of Civil Code, section 139, as amended." (Pp. 6-7.)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.