Edward C. **BELL**, Petitioner-Appellee,

v.

Richard D. **HONGISTO**, Respondent-Appellant.

No. 72-2797.

United States Court of Appeals,
Ninth Circuit.

July 26, 1974.

Rehearing and Rehearing En Banc Denied Sept. 19, 1974.

348

Herbert F. Wilkinson, Deputy Atty. Gen. (argued), San Francisco, Cal., for respondent-appellant.

B. E. Bergesen, III, (argued), Youth Law Center, San Francisco, Cal., for petitioner-appellee.

Before CHAMBERS, CARTER and WALLACE, Circuit Judges.

## OPINION

JAMES M. CARTER, Circuit Judge:

Richard D. Hongisto, the Sheriff of San Francisco, appeals from the order of the district court granting a writ of habeas corpus to the petitioner Edward Bell. Bell, an attorney, had been summarily convicted of direct contempt of the San Francisco Superior Court and was sentenced to five days in jail and a $500 fine. After exhausting his state remedies he brought this petition.

We are faced with three issues, each of constitutional dimensions: (1) Does § 1222 of the California Code of Civil Procedure, which denied Bell the *right to appeal* his contempt conviction, thereby violate the equal protection clause of the United States Constitution? (2) Does § 1222, Code Civ.P., which denied Bell *the right to bail* pending review of his conviction by petition for certiorari or habeas corpus, thereby violate the equal protection clause? (3) Does § 1211 of the California Code of Civil Procedure, which permits a *summary punishment* of those persons who commit contempt in the immediate presence of the court, violate the due process clause of the United States Constitution under the circumstances of this case?

The district court answered the first two of these questions affirmatively, and ordered Bell's release without reaching the question of due process. We reverse. While we express no opinion on the wisdom of § 1222, Code Civ.P., we cannot hold it in violation of the equal protection clause. We are thus confronted with the due process question which the district court avoided; and the record developed below is sufficient to satisfy us that § 1211, Code Civ.P., as applied to the facts in this case, has no constitutional infirmity.

### The Facts

On January 27, 1972, at 11:30 a. m., attorney Edward Bell appeared on behalf of three criminal defendants before the Master Criminal Calendar Judge of the San Francisco Superior Court. The Master Criminal Calendar Judge proceeded to assign the case to a trial judge. Bell was told to appear before that trial judge in two hours, that is, at 1:30 p. m. of the same day.

During the noon recess, Bell went to his office and telephoned two other attorneys for advice regarding the assigned trial judge. They informed Bell that the assigned judge was prejudiced in crucial ways.

During the remainder of the noon recess, Bell prepared a motion and affidavit to disqualify the trial judge peremptorily under § 170.6, Code Civ.P.[1] At 12:55 p. m. Bell presented the motion to the Master Criminal Calendar Judge, who denied it on the ground of untimeliness, stating that according to his reading of § 170.6 Code Civ.P., a disqualification motion must be filed at the time a trial judge is assigned. Bell's motion was therefore one hour and twenty minutes too late.

At 1:30 p. m. of that day, Bell appeared as scheduled and renewed the disqualification motion before the trial judge himself, who also denied the motion as untimely, telling Bell to proceed to trial. Bell declined on the ground that, by going to trial, he might be waiving his right to appeal the denial of the disqualification motion.

The trial judge then announced, " . . . Mr. Bell, I order you to proceed with the trial of this case forthwith. And, what is your reply to that?" Bell replied, "I refuse to go to trial, your Honor."[1a] Thereupon the

---

1. § 170.6, California Code of Civil Procedure.
  "(1) No judge or court commissioner of any superior, municipal or justice court of the State of California shall try any civil or criminal action or special proceeding of any kind or character nor hear any matter therein which involves a contested issue of law or fact when it shall be established as hereinafter provided that such judge or court commissioner is prejudiced against any party or attorney or the interest of any party or attorney appearing in such action or proceeding.
  "(2) Any party to or any attorney appearing in any such action or proceeding may establish such prejudice by an oral or written motion without notice supported by affidavit or declaration under penalty of perjury or an oral statement under oath that the judge or court commissioner before whom such action or proceeding is pending or to whom it is assigned is prejudiced against any such party or attorney or the interest of such party or attorney so that such party or attorney cannot or believes that he cannot have a fair and

impartial trial or hearing before such judge or court commissioner. . . .
  "(3) If such motion is duly presented and such affidavit or declaration under penalty of perjury is duly filed or such oral statement under oath is duly made, thereupon and without any further act or proof, the judge supervising the master calendar, if any, shall assign some other judge or court commissioner to try the cause or hear the matter. . . ."

1a. The full exchange between court and counsel reads as follows:
  "THE COURT: Well, as previously indicated, we are ready to go to trial and as I stated to Mr. Bell off the record, I do not intend to overrule Judge Calcagno, and I am ready to proceed with the case.
  "So, therefore, to be specific at this time, Mr. Bell, I order you to proceed with the trial of this case forthwith. And, what is your reply to that?
  "MR. BELL: My reply to that, your Honor, is that I feel that if I proceed to trial at this time I will waive my right,

trial judge found Bell in direct contempt of court and sentenced him to five days in jail and a $500 fine.

Under California law, Bell had no right *to appeal* this judgment of contempt, but he did have the right *to petition* the higher state courts for a writ of habeas corpus or a writ of certiorari. In order to allow Bell time to file such petitions, the trial judge stayed execution of the sentence until 9:30 a. m. of the following day (the 28th of January) and later extended the stay for four additional days (until February 1).

Bell quickly filed two petitions for review, one with the California Court of Appeals and, later, one with the California Supreme Court. Both petitions were denied. Bell went to jail on February 1, 1972. Subsequently, an additional peti-

tion in the California Supreme Court was denied on February 2, 1972.

On February 3, Bell filed a petition for a writ of habeas corpus in the federal district court. The district court ordered his release from custody on grounds that § 1222, Code Civ.P., violated the equal protection clause.

### The California Statutory Scheme

Sections 1237 [2] and 1466 [3] of the California Penal Code provide that the defendants in "criminal" cases have the right to appeal from a conviction.

Section 1272 [4] of the Penal Code provides that convicted defendants may be released on bail pending appeal.

Section 166 [5] of the penal Code provides that every person guilty of eight

my clients' right to peremptorily challenge his Honor and therefore in reference to my professional conduct as a member of the Bar I cannot proceed.

"THE COURT: Well, you refuse to go to trial?

"MR. BELL: I refuse to go to trial, your Honor.

"THE COURT: All right. Is there anything else that you have to present on the record at this time before I make a finding?

"MR. BELL: Can I get one telephone call?

"THE COURT: Pardon me?

"MR. BELL: No, there is nothing else.

"THE COURT: All right. The Court will find you in contempt of court in disobeying a direct order to proceed with the trial . . . ."

2. § 1237, California Penal Code.
"An appeal may be taken by the defendant:

1. From a final judgment of conviction except as provided in Section 1237.5.
. . .
2. From any order made after judgment, affecting the substantial rights of the party."

3. § 1466, California Penal Code.
"An appeal may be taken [by the defendant] from a judgment or order of an inferior court, in a criminal case, to the superior court of the county in which such inferior court is located, in the following cases. . . .
(a) From a final judgment of conviction.
. . .

(b) From any order made after judgment affecting his substantial rights."

4. § 1272, California Penal Code.
"When admitted to Bail after conviction and upon appeal. After conviction of an offense not punishable with death, a defendant who has appealed may be admitted to bail:

1. As a matter of right, when the appeal is from a judgment imposing a fine only.

2. As a matter of right, when the appeal is from a judgment imposing imprisonment in cases of misdemeanor.

3. As a matter of discretion in all other cases."

5. § 166, California Penal Code.
"Criminal Contempts. Every person guilty of any contempt of Court, of either of the following kinds, is guilty of a misdemeanor:

1. Disorderly, contemptuous, or insolent behavior committed during the sitting of any Court of justice, in immediate view and presence of the Court, and directly tending to interrupt its proceedings or to impair the respect due to its authority;

2. Behavior of the like character committed in the presence of any referee, while actually engaged in any trial or hearing, pursuant to the order of any Court, or in the presence of any jury while actually sitting for the trial of a cause, or upon any inquest or other proceedings authorized by law;

3. Any breach of the peace, noise, or other disturbance directly tending to interrupt the proceedings of any Court;

specified types of contempt, which are labelled "criminal contempt," is guilty of a "misdemeanor."

■ Section 1209 [6] of the Code Civ. P. Lists eleven types of "contempts of the authority of the court." Contempt proceedings brought under this section, as distinguished from § 166, Penal Code, are not "criminal" proceedings, *as a matter of terminology,* although they are criminal in character. Pacific Tel. & Tel. Co. v. Superior Court for Los Angeles County, 265 Cal.App.2d 370, 72 Cal.Rptr. 177 (1968).

Section 1211 [7] of the Code Civ.P. provides that a contempt committed in the immediate view and presence of the court may be punished summarily.

---

4. Willful disobedience of any process or order lawfully issued by any Court;

5. Resistance willfully offered by any person to the lawful order or process of any Court;

6. The contumacious and unlawful refusal of any person to be sworn as a witness; or, when so sworn, the like refusal to answer any material question;

7. The publication of a false or grossly inaccurate report of the proceedings of any Court;

8. Presenting to any Court having power to pass sentence upon any prisoner under conviction, or to any member of such Court, any affidavit or testimony or representation of any kind, verbal or written, in aggravation or mitigation of the punishment to be imposed upon such prisoner, except as provided in this Code."

6. § 1209, California Civil Procedure Code. "The following acts or omissions in respect to a court of justice or proceedings therein, are contempts of the authority of the court:

1. Disorderly, contemptuous, or insolent behavior toward the judge while holding the court, tending to interrupt the due course of a trial or other judicial proceeding;

2. A breach of the peace, boisterous conduct, or violent disturbance, tending to interrupt the due course of a trial or other judicial proceedings;

3. Misbehavior in office, or other wilful neglect or violation of duty by an attorney, counsel, clerk, sheriff, coroner, or other person appointed or elected to perform a judicial or ministerial service;

4. Abuse of the process or proceedings of the court, or falsely pretending to act under authority of an order or process of the court;

5. Disobedience of any lawful judgment, order, or process of the court;

6. Rescuing any person or property in the custody of an officer by virtue of an order or process of such court;

7. Unlawfully detaining a witness, or party to an action while going to, remaining at, or returning from the court where the action is on the calendar for trial;

8. Any other unlawful interference with the process or proceedings of a court;

9. Disobedience of a subpena [sic] duly served, or refusing to be sworn or answer as a witness;

10. When summoned as a juror in a court, neglecting to attend or serve as such, or improperly conversing with a party to an action, to be tried at such court, or with any other person, in relation to the merits of such action, or receiving a communication from a party or other person in respect to it, without immediately disclosing the same to the court;

11. Disobedience by an inferior tribunal, magistrate, or officer, of the lawful judgment, order, or process of a superior court, or proceeding in an action or special proceeding contrary to law, after such action or special proceeding is removed from the jurisdiction of such inferior tribunal, magistrate, or officer.

No speech or publication reflecting upon or concerning any court or any officer thereof shall be treated or punished as a contempt of such court unless made in the immediate presence of such court while in session and in such a manner as to actually interfere with its proceedings."

7. § 1211, California Civil Procedure Code. "When a contempt is committed in the immediate view and presence of the court, or of the judge at chambers, it may be punished summarily; for which an order must be made, reciting the facts as occurring in such immediate view and presence, adjudging that the person proceeded against is thereby guilty of a contempt, and that he be punished as therein prescribed.

When the contempt is not committed in the immediate view and presence of the court, or of the judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt, or a statement of the facts by the referees or arbitrators, or other judicial officers."

Section 1222 [8] of the Code Civ. P. provides that the judgment of the court in contempt cases is final and conclusive. This section, despite its broad language, does not apply to contemnors labelled "criminal" under the Penal Code, § 166. In re Buckley, 10 Cal.3d 237, 110 Cal.Rptr. 121, 514 P.2d 1201 (1973).

But it is clear that Bell does not belong to that class of contemnors labelled "criminal" under the Penal Code.[9] Hence § 1222, Code Civ.P., *does apply* to him.

Section 1222, Code Civ.P., as noted above, has been construed by California courts to bar *appeals* but to allow petitions for writs of habeas corpus and certiorari. *E. g.*, Heller v. Heller, 230 Cal.App.2d 679, 41 Cal.Rptr. 177 (1964). These remedies limit the inquiry of the reviewing court solely to questions of the inferior court's jurisdiction. In re Chapman, 141 Cal.App.2d 387, 295 P.2d 573 (1956). The term "jurisdiction" covers a great deal of ground, however, for the questions of whether a petitioner's alleged acts constituted contempt, and whether the evidence was sufficient to establish those alleged acts, have been held "jurisdictional" inquiries. In re Ciraolo, 70 Cal.2d 389, 74 Cal.Rptr. 865, 450 P.2d 241 (1969). Thus the scope of review by petition is practically as broad as the scope of review by appeal. *See* Comment, Contempt: Scope of Review of Contempt Orders in California, 37 Calif.L.R. 301 (1949).

### Equal Protection

Bell contends that § 1222, Code Civ. P., violates the equal protection clause of the United States Constitution because it precludes an appeal from an order adjudicating a person in contempt of court, and precludes bail pending review by petition, while at the same time § 1237 and § 1466 of the Penal Code allow "criminal" defendants these procedural benefits. (We temper this contention with the observation that persons convicted of contempt under § 166, Penal Code, are indeed permitted to appeal and have bail.)

The California Supreme Court rejected an argument identical to Bell's in In re Buckley, 10 Cal.3d 237, 110 Cal. Rptr. 121, 514 P.2d 1201 (1973). Since the contention raises a federal question, we are not bound by that state decision and are required to make an independent determination. Yet we must keep in mind that we are dealing with a state statutory scheme and the state case law interpreting and upholding it. Thus, in accordance with our principle of affording state laws a presumption of validity in order to avoid unnecessary federal interference in state affairs, *see* McNabb v. United States, 318 U.S. 332, 340, 63 S.Ct. 608, 87 L.Ed. 819 (1943), we pay deference to the views of the California Supreme Court. The discussion that follows is our own analytical journey to the same end, reached more briskly by that Court.

---

8. § 1222, California Civil Procedure Code. "The judgment and orders of the court or judge, made in cases of contempt, are final and conclusive."

9. The state court did not specify under what statute Bell was convicted, but an examination of the case shows that it could *not* have been § 166, P.C. A "'violation of section 166 of the Penal Code is a misdemeanor and as such it is to be prosecuted in the same manner as other misdemeanors' rather than under the Code of Civil Procedure for sum-

mary contempts." In re McKinney, 70 Cal. 2d 8, 14, 73 Cal.Rptr. 580, 584, 447 P.2d 972, 974 (1968). "[T]he superior court [has] no jurisdiction to hear and convict the petitioner of the misdemeanor of contempt of court under section 166 of the Penal Code." *McKinney, supra*, at 13, 73 Cal. Rptr. at 583, 447 P.2d, at 975.

Since the superior court punished Bell summarily, and the California Court of Appeals and the California Supreme Court found no jurisdictional error, the judgment of contempt was necessarily not under § 166, P.C.

### (a) Right to appeal

■ Respondent contends that Bell's argument regarding a right to equal treatment with "criminal" defendants is eviscerated by the fact that Bell was not held in "criminal" contempt. We reject the respondent's contention. It is true that Bell was convicted under §§ 1209 and 1211, Code Civ.P., not under § 166, Penal Code, and hence was not a "criminal" under the statutory terminology. But Bell's contempt was essentially "criminal" in nature, even if not "criminal" by virtue of § 166, Penal Code, because the purpose of the contempt sanction in this case was punitive rather than compensatory or coercive. *See* Morelli v. Superior Court of Los Angeles County, 1 Cal.3d 328, 82 Cal.Rptr. 375, 461 P.2d 655 (1969); Gompers v. Buck's Stove & Range Company, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911); Penfield Co. of California v. Securities & Exchange Com'n, 330 U.S. 585, 67 S.Ct. 918, 91 L.Ed. 1117 (1947); In re Nevitt (8 Cir. 1902) 117 F. 448.

Accordingly, we consider the question whether it is constitutionally permissible to deny contemnors suffering essentially criminal sanctions the same right of appeal afforded those defendants actually labelled "criminal."

In equal protection cases, the burden of justification that must be carried by the state is sometimes *heavy* and sometimes *light,* depending on the nature of the classification in question and the nature of the imposition which the state law places upon the encumbered class.

■ A *strict* standard of judicial review is invoked whenever the state law operates to the disadvantage of a "suspect class" (examples being a class based on race or alienage) or whenever the state law impairs a "fundamental interest" (such as the right to vote or to travel interstate); when such a law is challenged, it will be held unconstitutional unless the state can show it is necessary to promote a compelling state interest.[10]

■ On the other hand, if the law in question neither injures a "suspect class" nor impairs a "fundamental interest," it will be evaluated under the *general* standard. Under this test, the state law is valid so long as it rationally furthers a legitimate state interest.[11]

■ In order to choose the correct standard of review in this case, we must ascertain whether or not a fundamental interest is impaired sufficiently to invoke strict scrutiny. (No serious contention can be made that state law here injures a "suspect class.")

In this inquiry, the leading case cited by Bell is Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), which held that an indigent was entitled to a free trial transcript on appeal. *Cf.* Mayer v. City of Chicago, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971). But we do not find *Griffin* or *Mayer* controlling.

First, *Griffin* and *Mayer,* although recognizing the importance of adequate review of a criminal conviction, do not *expressly* call it a "fundamental interest," nor is it clear a strict standard of review was applied.

■ Secondly, assuming the Court in those cases did in fact *tacitly* find a "fundamental interest" and apply a strict standard of review, the Court did so largely because the classification in question was based on wealth. Classifications based on wealth are "traditionally disfavored." Harper v. Virginia Bd. of Elections, 383 U.S. 663, 668, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). But Bell's class is not indigent.

Since Supreme Court decisions provide no authority for regarding the right to adequate appellate review as "fundamental," we look to the Constitu-

10. San Antonio School District v. Rodriguez, 411 U.S. 1, 16–17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) and citations therein.

11. *Id.*

tion itself for guidance. The lesson of San Antonio School District v. Rodriguez, 411 U.S. 1, 33–34, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16 (1973) is that ". . . the key to discovering whether [an interest] is 'fundamental' . . . lies in assessing whether there is a right to [that interest] explicitly or implicitly guaranteed by the Constitution." *San Antonio School District, supra.*

■ The Constitution, a basic text of criminal procedure, contains numerous provisions to safeguard the criminal defendant. But in all its provisions, we find no implicit, and surely no explicit, guarantee of the right to appeal. As said in *Griffin, supra,* 351 U.S. at 18, 76 S.Ct. at 590, "It is true that a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all."

■ Furthermore, even if the right to adequate review of a criminal conviction were a "fundamental interest," we do not believe that this right or interest was significantly impaired in the instant case. The cases speak loosely at times of invoking the standard of strict scrutiny whenever a fundamental interest is "involved." The facts in those cases make clear, however, that it is actually the significant "impairment" of the fundamental interest, not merely its "involvement" that has led courts to apply the strict standard.

In the instant case, there is probably some degree of detriment imposed on Bell by § 1222, Code Civ.P., but we believe it is slight. We have considered the two ways suggested by Bell in which an appeal is more advantageous than a petition for review: (1) because misdemeanants have more time to prepare arguments to present to the reviewing court than do contemnors like Bell; and (2) because misdemeanants are assured a hearing before the reviewing court and a full consideration of their case, while contemnors like Bell often have their petitions denied summarily without a hearing.

As to (1), we note that misdemeanants have a statutory allotment of time in which to prepare appellate arguments, as provided in the California Rules of Court 105 and 182. On the other hand, contemnors under § 1209, Code Civ.P., have no fixed time limits in which to file their petitions for review. While this allows them to take as much time as they please, as a practical matter they are forced to file their petitions within days or even hours if they wish to avoid incarceration. But we doubt whether a longer period would benefit contemnors significantly. Contempt cases generally present fewer and simpler questions for review than ordinary criminal cases. The contemning court will generally stay the execution long enough for the contemnor adequately to prepare the relatively simple petition. Bell, for instance, had the execution of his sentence stayed for five days while he prepared and filed petitions for review.

As to (2), we note that the California Rules of Court seek to guarantee that each misdemeanant will have a thorough consideration given to his case by the reviewing court. Rules 183, 190 and 106. On petitions by contemnors convicted under § 1209, Code Civ.P., no such rules are at hand to guide the judicial process.

We are not persuaded, however, that petitions for review are less adequately considered by the reviewing court than are briefs on appeal. Only if the petition can be disposed of on its face will the petitioner be denied a hearing. The petitioner with a serious claim will thus be on equal footing with a misdemeanor appellant with a serious claim.

Bell points to the fact that his first petition was denied a mere ten minutes after its filing. Yet Bell makes no showing that his petition on its face displayed sufficient merit to warrant longer deliberation. Even if the first petition was too hastily denied, any error would have been cured by consideration of the subsequent petitions. The second petition was denied four hours after its

filing. This was time enough to allow for a full perusal of its contents and adequate consideration of its merits.

■ The mere fact that a decision is speedily forthcoming, therefore, is insufficient to raise a presumption that the reviewing court failed in its duty to consider a case thoroughly. To find a dereliction of duty we would require concrete evidence. Bell fails to adduce such evidence.

■ Therefore, even on the dubious assumption that the right to appeal is a "fundamental interest," we believe that the interest was not sufficiently impaired to invoke strict judicial scrutiny. We therefore shall judge the California statute under the general standard. Accordingly, § 1222, Code Civ.P., insofar as it denies the right to appeal, must be held valid so long as it rationally[12] furthers a legitimate, articulated state objective.

One objective behind § 1222, Code Civ.P., in the context of punitive sanctions, is to facilitate the preservation of order and administrative regularity. This objective is patently legitimate. We need only inquire, then, whether the California legislature had reason to believe that § 1222, Code Civ.P., would rationally further such goal.

Since contempt, unlike other criminal behavior, is a direct attack on the authority of the court and tends to thwart the processes of justice, the legislature might reasonably deem it desirable to devise special procedures to safeguard the courts. Section 1222, Code Civ.P., arguably provides this safeguard in two respects. First, it encourages the trial court to mete out necessary punishment, for a court might be reluctant to cite a person for contempt if conviction might lead to lengthy appeals which would further delay and disrupt the trial process. Second, it increases the deterrent value of the punishment, for a conclusive, non-appealable judgment of conviction is assuredly a more frightening prospect for the would-be contemnor than a judgment whose sting is mitigated by the delay of time-eating appeals.

■ We therefore hold that § 1222, Code Civ.P., rationally furthers a legitimate state objective and thus does not violate the equal protection clause.

#### (b) Right to bail

Section 1222, Code Civ.P., as interpreted by the California Supreme Court, has been held to mean (1) that no contemnor except one convicted under § 166, P.C., may *appeal* his conviction, and (2) that no contemnor except one convicted under § 166, P.C., is entitled to *bail* pending review of his conviction by petition.

■ Bell lacks standing to argue the unconstitutionality of the denial of bail rights, for although he had no right to bail, he was granted a stay of sentence, during which he petitioned both the California Court of Appeals and the California Supreme Court. The stay was an equivalent of bail.

■ In Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), the Supreme Court stated the familiar rule that "a person cannot challenge the

---

12. A statute does not "rationally" further certain goals merely because it *logically* tends to promote them. A legislature does not act "rationally" when it acts in logical furtherance of lesser goals at the gross expense of more vital goals.

Thus, to determine whether a statute is rational, the court must consider the statute's logical tendency to promote its avowed goals against its tendency to impair other, more important goals. This does not mean we shall oversee a legislature in its policy decisions, or try to impose our will in choosing among competing values. That would exceed our province. But when a legislature's choice is manifestly contrary to certain basic values inherent in a just society, we must hold that choice to be irrational.

In the instant case, we see nothing in the statute to indicate that certain values basic to a just society are being sacrificed irrationally for the sake of inferior values. Hence in this case we should hold the statute "rational" so long as it tends *logically* to further its purposed objectives.

constitutionality of a statute unless he shows that he himself is injured by its operation." (at 255, 73 S.Ct. at 1034). A corollary of this rule is that, if a statute contains separable provisions, a person may challenge only those provisions which operate to injure him, and he may not challenge those provisions that cause him no harm.

Bell therefore cannot be heard to argue that the rule as to bail, in its application to his case, denied him equal protection of the laws. " . . . [O]ne to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L. Ed.2d 524 (1960). This principle cannot be relaxed in the present case, for Bell lacks the type of relationship with other persons which might give him standing to assert their rights, and because persons adversely affected by the bail provision will be able adequately to protect their own rights regardless of the outcome of this litigation. *See* Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

■ There is another reason why the question of the right to bail is not before us. This is a habeas corpus proceeding, the ultimate purpose of which is to secure the petitioner's release from unlawful custody. Bell could raise the bail question only if an improper denial of bail was the cause of his custody at the time of the instant petition. At the time Bell commenced this habeas corpus proceeding, however, the review of his contempt conviction had been completed within the state courts and, therefore, even if he was constitutionally entitled to bail pending state court review, that time had expired when this habeas corpus proceeding began. No relief can be afforded in this habeas corpus proceeding for the allegedly improper denial of bail, for the denial of bail was not the cause of Bell's custody at the time petition herein was filed.

### Due Process

Bell contends it was fundamentally unfair for the trial judge to find him in contempt summarily under § 1211, Code Civ.P. Of his various arguments in support of this contention, the majority are frivolous, but two warrant a short discussion. First, he argues that the trial judge was personally embroiled with him and thus should have been disqualified from adjudging him in contempt. Secondly, he argues that the conviction was so erroneous as a matter of state law that it denied him due process.

■ When a judge becomes so "personally embroiled" with a lawyer that he is unable to sit impartially in judgment on the contempt charge, due process requires that he must be disqualified. Mayberry v. Pennsylvania, 400 U.S. 455, 465, 91 S.Ct. 499, 27 L. Ed.2d 532 (1971). But on the facts of this case, we are far from persuaded that the trial judge was "personally embroiled" with Bell. Bell's conduct did not vilify the judge. To the contrary, Bell was polite throughout. And the judge's comments on record do not demonstrate a bias or anger against Bell. Accordingly, we see no constitutional violation in the contemned judge sitting in judgment on the contempt charge.

■ As for Bell's argument that the conviction was flagrantly erroneous under state law, thereby denying him due process, we are not persuaded. Bell's conviction was reviewed three times in the higher California courts. Each time his conviction was allowed to stand. We infer that the higher California courts found the conviction correct under the state law. The contention that the conviction was flagrantly erroneous is therefore without merit.

### Conclusion

We hold that § 1222, Code Civ.P., does not violate the equal protection clause of

the United States Constitution. We hold also that § 1211, Code Civ.P., was not applied in violation of the due process clause of the Constitution. Accordingly, we reverse and remand with directions to deny the petition for habeas corpus.

**Reversed and remanded with directions.[13]**

13. On June 26, 1974, the Supreme Court decided Taylor v. Hayes, 418 U.S. 488, 94 S. Ct. 2697, 41 L.Ed.2d 897. There the judge, following the trial, proceeded to hold the petitioner in summary contempt. The Court held in part that because of the acrimony of the confrontation between the trial judge and the contemnor, another judge should have tried the contempt matter.

On July 8, 1974, in Grossman v. Striepeke (9 Cir., July 13, 1973, No. 72–2526) unpublished, the Supreme Court vacated the judgment and remanded for reconsideration in view of Taylor v. Hayes, *supra*. (42 U.S.L. W. 3710). As in *Hayes*, *supra*, the judge, following the trial, held Grossman in contempt.

The factual situations in both *Hayes* and *Grossman* were vastly different from the factual situation in the case at bar. In *Hayes* and *Grossman* the exchanges between the contemnor and the court were acrimonious. In each the contempt was imposed following trial.

In the case at bar, the contempt occurred when the trial was about to start. There was no acrimonious exchange between the court and contemnor. The judge simply ordered the attorney to proceed with the trial and inquired, "What is your reply to that?" Bell responded, "I refuse to go to trial, your Honor." See footnote [1a] for the full exchange between court and counsel.

In *Hayes*, the Court stated 418 U.S. at 497, 94 S.Ct. at 2702:

"We are not concerned here with the trial judge's power, for the purpose of maintaining order in the courtroom, to punish summarily and without notice or hearing contemptuous conduct committed in his presence and observed by him. Ex parte Terry, 128 U.S. 289 [9 S.Ct. 77, 32 L.Ed. 405] (1888). The usual justification of necessity, see Offutt v. United States, 348 U.S. 11, 14 [75 S.Ct. 11, 99 L.Ed. 11] (1954), is not nearly so cogent when final adjudication and sentence are postponed until after trial."

By way of comparison with the procedure followed in *Hayes* the Court notes an important event which ordinarily occurs in a summary contempt proceeding such as we have before us:

"Even where summary punishment for contempt is imposed during trial, 'the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution.' Groppi v. Leslie, *supra*, 404 U.S., at 504 [92 S.Ct. 582, at 587] (and cases cited therein)." 418 U.S. at 498, 94 S.Ct. at 2703 (footnote omitted).

Added enlightenment is found in *Groppi* at the page cited by the Court as authority for its statement:

"Where a court acts immediately to punish for contemptuous conduct committed under its eye, the contemnor is present, of course. There is then no question of identity, nor is hearing in a formal sense necessary because the judge has personally seen the offense and is acting on the basis of his own observations. Moreover, in such a situation, the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution." Groppi v. Leslie, 404 U.S. 496, 504, 92 S.Ct. 582, 587, 30 L.Ed.2d 632 (1972) (footnote omitted).

Here the record reflects that Bell had an adequate opportunity to speak in his own behalf.

In a companion case decided on the same day as *Hayes*, Codispoti v. State of Pennsylvania, 418 U.S. 506, 94 S.Ct. 2687, 2692, 41 L.Ed.2d 912, the Court said:

"There are recurring situations where the trial judge, to maintain order in the courtroom and the integrity of the trial process in the face of an 'actual obstruction of justice,' In re McConnell, 370 U.S. 230, 236 [82 S.Ct. 1288, 1292, 8 L.Ed.2d 434] (1962) ; see also In re Little, 404 U.S. 553, 555 [92 S.Ct. 659, 660, 30 L.Ed. 2d 708] (1972), convicts and sentences the accused or the attorneys for either side for various acts of contempt as they occur. Undoubtedly, where the necessity of circumstances warrants, a contemnor may be summarily tried for an act of contempt during trial and punished by a term of no more than six months. . . ."

If the contempt in the case at bar, occurring at the commencement of a trial, could not be punished summarily by the judge before whom the contempt occurred, then no such contempt could ever be punished by the judge before whom it occurred.